THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* RONALD WITHERSPOON, Contemnor-Appellant.

First District (1st Division)   No. 76-1453

Opinion filed August 22, 1977.—Rehearing denied September 15, 1977.

152

James J. Doherty, Public Defender, of Chicago (Gail A. Moreland, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Contemnor Ronald Witherspoon was found in contempt of court for failure to obey a *subpoena ad testificandum* in a criminal trial and was sentenced to a term of six months in prison. Witherspoon appeals, contending he was not proved guilty beyond reasonable doubt of wilfully failing to obey the *subpoena*.

At the hearing on the rule to show cause, Thomas Mauet, an assistant State's Attorney, testified that on April 22, 1976, he went to 6235 South Ellis, Chicago, Illinois, with Dirk Lawry, an investigator for the State's Attorney's office. Mauet spoke to Witherspoon about the case of People v. Wilson, which involved the shooting of Michael Carson. Witherspoon stated that he recalled the shooting, but not the details. Witherspoon told Mauet that he was willing to testify the following morning, April 23, 1976. Mauet gave Witherspoon a *subpoena* and told him that it directed him to appear before Judge Collins at Room 2307 of the Civic Center at 9:30 a.m. on April 23, 1976, to testify in the case of People v. Wilson.

Mauet stated that he was in Room 2307 of the Civic Center on April 23, 1976, at 9:30 a.m., but Witherspoon was not in the courtroom or in the corridor outside it. Mauet called Witherspoon's home telephone number three times between 10:30 a.m. and 12:15 p.m., but received no answer. At 1:30 p.m. on that day, Mauet returned to the courtroom but did not see Witherspoon. He asked for a bench warrant for Witherspoon at 3 p.m. that afternoon. On cross-examination, Mauet testified that when he visited Witherspoon on April 22, 1976, Witherspoon was cooperative and responsive. Mauet did not ask for a continuance of the trial when Witherspoon failed to appear.

Witherspoon's motion to dismiss the petition for rule to show cause on the ground that the State failed to prove that he wilfully did not appear was denied.

Ronald Witherspoon testified in his own behalf. He stated that the victim in People v. Wilson was his friend. He was interested in testifying because he wanted to convict Wilson. On April 23, 1976, he awoke at noon. He could not explain why he overslept. He normally awakens at about 8 a.m. He guessed it was just one of those days. He dressed and took the "El" to the Civic Center, arriving at about 1 p.m. There was no one in Room 2307, so he left. He did not call the State's Attorney's office because he had lost the *subpoena* and the card Mauet had given him.

On cross-examination, Witherspoon testified that although he had an alarm clock, he did not set it. He did not call the court or the State's Attorney's office when he arose. He saw no one in the courtroom and he made no inquiries about the case. After remaining outside the courtroom for one or two minutes, he left. On redirect examination, he stated he normally awakened without the aid of an alarm clock.

■■ Criminal contempt is conduct which is calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute (*People v. Wilson* (1975), 35 Ill. App. 3d 86, 88, 341 N.E.2d 34), whereas civil contempts are prosecuted to enforce the rights of private parties and to compel obedience to orders or decrees for the benefit of opposing parties. (*People ex rel. Chicago Bar Association v. Barasch* (1961), 21 Ill. 2d 407, 173 N.E.2d 417.) Under the facts here, Witherspoon's conduct, if it constituted a contempt, was a criminal contempt. Because it did not occur in the courtroom or in a place set apart for the use of a constituent part of the court, it was an indirect criminal contempt. (*People v. Ryan* (1952), 412 Ill. 54, 104 N.E.2d 821; *People v. Image Theatre, Inc.* (1974), 18 Ill. App. 3d 777, 310 N.E.2d 658.) Only conduct performed wilfully can constitute an indirect criminal contempt. (See *Ryan; People v. Adam* (1973), 15 Ill. App. 3d 669, 304 N.E.2d 711.) The State had the burden of proving Witherspoon's guilt beyond a reasonable doubt. *Barasch; People v. Marcisz* (1975), 32 Ill. App. 3d 467, 334 N.E.2d 737, *modified on other grounds*, 65 Ill. 2d 206, 357 N.E.2d 477.

■■ Witherspoon argues that the State did not prove beyond a reasonable doubt that he wilfully failed to obey the *subpoena*. We agree. It is uncontroverted that he was served with the *subpoena* and that he failed to appear at the time required by the *subpoena*. However, the State did not adduce any evidence which showed that Witherspoon knowingly or wilfully did not appear. Witherspoon said he usually awoke at 8 a.m. without the aid of an alarm clock, but that he did not awaken until noon

on the day in question. Indeed, Witherspoon testified that when he awoke he went immediately to the courtroom where he was to testify. Although we do not condone his failure to appear on time to testify, the evidence does not prove beyond a reasonable doubt that he knowingly or wilfully was late. At most, the evidence proves that he acted negligently. A negligent act is not a knowing or wilful act. See Ill. Ann. Stat., ch. 38, par. 4—3, Committee Comments, at 255-58 (Smith-Hurd 1972).

In our opinion, the totality of the circumstances here leaves a reasonable doubt as to whether Witherspoon wilfully failed to obey the *subpoena* and his conviction cannot stand.

The judgment of the circuit court of Cook County is reversed.

Reversed.

GOLDBERG, P. J., and McGLOON, J., concur.