93 Ill. App.3d 6 (1981)
416 N.E.2d 736
In re K.S.Y., a Minor.  (THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee,
v.
K.S.Y., Respondent-Appellant.)
No. 15980.
Illinois Appellate Court  Fourth District.
Opinion filed February 3, 1981.
*7 Daniel D. Yuhas and James G. Woodward, both of State Appellate Defender's Office, of Springfield, for appellant.
Thomas J. Difanis, State's Attorney, of Champaign (Robert J. Biderman and Larry Wechter, both of State's Attorneys Appellate Service Commission, of counsel), for the People.
Reversed and remanded.
Mr. JUSTICE WEBBER delivered the opinion of the court:
This proceeding represents yet another attempt by the circuit court of Champaign County to erect a parallel system of juvenile justice to that provided by the Juvenile Court Act. We have recently indicated (In re T.V.P. (1980), 90 Ill. App.3d 800, 414 N.E.2d 209) our disapproval of the effort. The instant case bears a remarkable resemblance on its facts and its results to In re T.V.P.
A petition was filed alleging that K.S.Y. was a minor otherwise in need of supervision pursuant to section 2-3 of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 702-3). The grounds alleged were habitual truancy. On July 26, 1979, the minor stipulated as to the allegations of the petition and the court purported to continue the matter for one year under supervision as provided in section 4-7 of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 704-7).
Thereafter, on September 6, 1979, a petition for rule to show cause was filed by the State's Attorney, alleging that the minor had been absent from school on August 30, 1979. An order to show cause was issued based on the petition, and on October 29, 1979, the minor appeared and stipulated to the absence on August 30, 1979. The court then found the minor in indirect criminal contempt of the court, ordered a presentence investigation report and on December 3, 1979, sentenced the minor to 12 months' probation with a special condition that he serve 60 days in jail.
This appeal followed in which the minor alleges that the order on which the contempt was based was void, and subject to attack on appeal. He also claims, alternatively, that he did not receive admonishments under Supreme Court Rule 402 (73 Ill.2d R. 402), and that the 60-day jail term was an abuse of discretion.
 1 In their briefs and arguments the parties dwell at length on the *8 validity of the order of contempt in terms of its requirement that the "minor must attend school each and every day that school is in session." The minor argues that since the order makes no provision for excused absences, it is void. The State asserts that any such defect is nonjurisdictional and was waived by the minor by his admission of the absence on August 30, 1979. While we believe that the order is too broad in the sense as argued by the minor, we find more serious defects in the proceedings than that.
The contempt power as used to enforce supervisory orders under the Juvenile Court Act was recognized by the supreme court in In re Baker (1978), 71 Ill.2d 480, 376 N.E.2d 1005. However, in Baker, the juvenile had been adjudicated as a ward of the court in need of supervision. No such posture exists in the instant case.
As indicated above, the trial court purported to proceed under section 4-7(1) of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 704-7(1)), which reads as follows:
"(1) In the absence of objection made in open court by the minor, his parent, guardian, custodian or responsible relative, the court may, before proceeding to findings and adjudication, or after hearing the evidence but before noting in the minutes of proceeding a finding of whether or not the minor is a person described in Section 2-1, continue the hearing from time to time, allowing the minor to remain in his own home subject to such conditions as to conduct and visitation and supervision by the probation officer or other designee of the court as the court may prescribe."
It can thus be seen that this provision is a humane one which stops short of the full panoply of adjudication of wardship and disposition, and affords the minor the opportunity to rehabilitate himself without incurring an adjudication of wardship on his record. It is thus parallel to similar provisions in section 10 of the Cannabis Control Act (Ill. Rev. Stat. 1979, ch. 56 1/2, par. 710) and section 410 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1979, ch. 56 1/2, par. 1410).
In the instant case, the trial court violated section 4-7 of the Juvenile Court Act which dictates that the court proceed "after hearing the evidence but before noting in the minutes of proceeding a finding of whether or not the minor is a person described in Section 2-1." The record discloses that the minutes of July 26, 1979, read in part as follows: "The Court enters finding that the minor respondent is a person described in the petition filed June 5, 1979." The formal order, signed and entered the same day, recites that a dispositional hearing was held, although none appears in the record, and then purports to place the minor under supervision under the provisions of section 4-7.
 2 The result is a flawed proceeding whether viewed from the perspective *9 of section 4-7 or from the subsequent provisions of the Juvenile Court Act. The finding had been entered which forfended further proceedings under section 4-7, yet there was no adjudication of wardship and time set for disposition as required by section 4-8(2) of the Act (Ill. Rev. Stat. 1979, ch. 37, par. 704-8(2)).
The question then becomes whether the proceeding is so seriously flawed as to deprive the trial court of jurisdiction. We believe that it was.
In City of Chicago v. King (1967), 86 Ill. App.2d 340, 354, 230 N.E.2d 41, 48, cert. denied sub nom. Ditto v. Chicago (1969), 393 U.S. 1028, 21 L.Ed.2d 571, 89 S.Ct. 626, the appellate court said:
"[C]ontempt will not lie for violation of a void decree [citation], but voidness is established when the issuing court is found to have lacked jurisdiction to enter such an order. * * * The test of jurisdiction is said to be whether the court has power to enter into the inquiry before it, and this is determined by (1) jurisdiction of the parties, (2) jurisdiction of the subject matter, and (3) power in the court to decide the particular matters presented. All such factors being present, the correctness of the court's determination has no bearing upon the initial question of jurisdiction."
In the instant case, the trial court's own actions deprived it of the power to act. It entered a finding which deprived it of power to proceed further under section 4-7, and it did not follow up its finding with adjudication of wardship, and setting for disposition. While it undoubtedly had jurisdiction of the parties and the subject matter, the third prong of King, i.e., the power to decide, was lacking, and therefore the court was without jurisdiction. Since the defect is jurisdictional, waiver does not apply.
In view of our disposition of the matter, we need not, and do not, decide whether the power acknowledged in Baker extends to orders properly entered under section 4-7.
Since we reverse the order of contempt, we need not address the additional issues of the Rule 402 admonition and the sentence of 60 days which are raised by the minor. However, we feel constrained to comment on the sentencing hearing as it relates to the contempt power. It will be remembered that the contempt citation was for a single absence from school, namely, August 30, 1979. Yet, the presentence report refers to the minor's "conduct in the community" and his "multitude of problems." The remarks of the State's Attorney and the trial judge at the sentencing hearing indicate that they both went far afield from the single incident which was the predicate for the contempt citation. It is apparent that the minor was being punished for much more than a single incident of truancy.
While we are sympathetic with the efforts of trial courts sitting in *10 juvenile proceedings to deal with truancy, especially in cases of recalcitrant and rebellious respondents, nevertheless, we note that public policy as set forth in the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 1-1 et seq.) does not equate truancy with a major infraction of the law. Section 26-12 of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 26-12) prohibits punitive action against the truant unless other resources have first been provided. Furthermore, criminal proceedings under the Code are directed against those having custody of the child, not the child himself (Ill. Rev. Stat. 1979, ch. 122, par. 26-10), and are limited to a Class C misdemeanor. Proceedings against the child himself are limited to a juvenile petition for supervision (Ill. Rev. Stat. 1979, ch. 122, par. 26-8a). Dispositions for minors in need of supervision are set forth in section 5-2(b) of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 705-2(b)), and are preferred to probation and incarceration. In re G.B. (1980), 88 Ill. App.3d 64, 410 N.E.2d 410; In re T.V.P.
The contempt order is reversed and the cause is remanded to the circuit court of Champaign County.
Reversed and remanded.
CRAVEN, J., concurs.
Mr. JUSTICE GREEN, concurring in part and dissenting in part:
I would reverse the contempt conviction and sentence but would remand for a new hearing on the contempt charge.
Since the decision in People v. Gilmore (1976), 63 Ill.2d 23, 344 N.E.2d 456, a substantial question exists as to whether the failure of the circuit court to follow statutory requirements deprives it of jurisdiction to enter an order provided for in that statute. (See also Lopin v. Cullerton (1977), 46 Ill. App.3d 378, 361 N.E.2d 6; Fins, Illinois Appellate Procedure Under the New Constitution 47 (2d ed. 1977).) Even without reference to Gilmore, a circuit court's failure to adjudicate wardship upon determining delinquency was held to make a probation order not void but only voidable in In re Brown (1977), 48 Ill. App.3d 171, 367 N.E.2d 707. Upon appeal from a subsequent order revoking the minor's probation and committing him to the Department of Corrections, the appellate court did not set aside the order placing the minor on probation. Rather, it remanded the case to the trial court to determine whether the best interests of the minor and the public required that he be declared a ward. If the requirement was found to exist, the order was to stand; if not, the minor was to be discharged.
Regardless of what the present rule may be as to the necessity of the circuit court following the statute in order to obtain jurisdiction of a *11 statutory proceeding, I do not deem the instant record to be so flawed as to have deprived the trial court of jurisdiction to have entered the order, the alleged violation of which was the basis of the contempt proceeding.
I interpret the intent of the judge entering the order with reference to supervision to have been to impose a continuance under supervision pursuant to the terms of section 4-7. The judge did pronounce in open court that he found the minor to be a person described in the petition, but he then continued the matter for a definite period with the minor under supervision. This pronouncement could be considered to be an entry into the "minutes." However, the formal order filed on the same day, but presumably after the pronouncement, made no reference to the minor being any type of person covered by section 2-1. The reference to a continuance under supervision pronounced in court corresponded to the reference to section 4-7 in the formal order. The inaccurate reference in the formal order to a dispositional hearing being held should be treated as surplusage.
The supreme court's upholding of the In re Baker contempt order was based upon the trial court's inherent contempt power. That power would logically be as applicable to violations of an order entered pursuant to a continuance as to an order entered after an adjudication. The precedent of that case is binding here.
The validity of the order requiring the school attendance was not destroyed by its failure to expressly state that a failure to attend school might be excused. Any probationary type order is subject to permissible noncompliance on reasonable grounds. Accordingly, an excused absence would not have been a wilful and contumacious failure to abide by the court order. However, the instant contempt proceeding was a criminal proceeding and Supreme Court Rule 402 (73 Ill.2d R. 402) was applicable. The court complied with the rule in most respects, but the record is not clear that the minor was advised that an absence would not have been contempt if a reasonable excuse for the absence existed. The factual basis for the minor's admission of contempt did not show that the absence was without reasonable excuse. For these reasons I agree with the majority that the judgment of contempt must be set aside.
The purpose of the use of the contempt procedure in a case of this nature is to uphold the power of the court. (In re G.B.) I look upon its use in cases of this nature with more favor than does the majority, but it must be recognized that the severity of the punishment should be limited by that necessary to serve the purpose of the proceeding. We indicated in In re G.B. that criminal probation accompanied by incarceration was inappropriate for use against a minor in a case of this nature. The court should impose the incarceration desired and then let the juvenile procedure continue.