THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ANTHONY SCOTT MOWERY, Defendant-Appellant.

Fourth District   Nos. 4—82—0537 through 4—82—0539 cons.

Opinion filed July 25, 1983.

MILLER, J., concurring in part and dissenting in part.

Daniel D. Yuhas and Janet Sinder, both of State Appellate Defender's Office, of Springfield, for appellant.

Donald D. Bernardi, State's Attorney, of Pontiac (Robert J. Biderman and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

Defendant appeals from an order of the circuit court of Livingston County which found him to be in contempt of court for neglecting and refusing to pay court costs and restitution as part of his sentence of probation. He was sentenced to 158 days in jail.

On September 12, 1979, defendant entered a plea of guilty to three counts of burglary and one count of criminal damage to property. He was sentenced to two years' probation on each count, the sentences to run concurrently; and in each case a fine of $50, court costs and restitution were ordered to be paid within 90 days, the amount of restitution to be determined by the Court Services Department. A report from that department indicated that the total fines, costs and restitution was $1,105.55 and that the defendant was unable to meet the deadline for payment. The trial court, on motion of the State, extended the time for payment to September 12, 1980, by an order modifying the probation order of September 12, 1979.

On October 9, 1980, another order of modification was entered. At that time $915.55 remained unpaid on the fines, costs and restitution, and the trial court ordered the defendant to pay $90 per month on that sum commencing November 1, 1980, and each month thereafter.

On December 10, 1980, the State filed a petition to revoke probation, alleging that neither the November 1980 or the December 1980 payments of $90 had been made. Summons was issued and served upon the defendant on December 12, 1980; the hearing was set for January 12, 1981, in the summons; on that date on motion of the State it was continued to March 9, 1981, and notice of the continuance was served upon the defendant. The record does not disclose any hearing on that date but does indicate payments by the defendant of $50 on February 24, 1981; $50 on March 5, 1981; $20 on May 4, 1981;

$40 on June 30, 1981; and $40 on August 24, 1981.

On November 20, 1981, while the petition to revoke of December 1980 was still pending, a second petition to revoke probation was filed alleging that the defendant had failed to pay the fine and costs in two of the cases and was delinquent in the amount of restitution in all four cases of $155.55. Defendant appeared pursuant to notice, counsel was appointed for him, and he was arraigned on the petition to revoke.

On January 14, 1982, both petitions were called for hearing. Their prayers for revocation of probation and imposition of sentence were denied by the court which treated the matter as a contempt and sentenced defendant to two days' imprisonment in each case, the sentences to be served concurrently.

Finally, on June 16, 1982, the State filed a petition for rule to show cause against the defendant. The essential allegation of that document was: "That said defendant has neglected and refused to fully comply with said Order. Defendant owes Court costs in the amount of $90.00 and restitution in the amount of $155.55 for a total of $245.55."

The court entered the rule; a warrant was issued for the defendant; and the cause came on for hearing on July 19, 1982. At the commencement of that hearing the trial court began to admonish the defendant, stating that the State had the burden of proof. The State's Attorney interjected, "Judge, I believe this is a rule, we would not have the burden of proof in a rule." The trial court agreed. The court then inquired of the defendant whether he desired counsel and appointed the public defender. A short recess was then taken; the court determined upon reconvening that the defendant had consulted by telephone with counsel but elected to proceed *pro se*. The court then called upon the defendant to admit or deny the allegations of the rule, and upon defendant's admission of delinquency of $245.55 in costs and restitution, held him in contempt and sentenced him to 158 days in the county jail of Livingston County.

We have indulged in this lengthy recital of the history of this matter in order to demonstrate that both the trial court and the State have extended much charity to the defendant, and we are aware of the exasperation visited upon them by defendant's persistent failure to comply with his probation order. However, we find the proceedings pursuant to the rule to show cause to be fatally flawed.

Defendant first contends that the trial court lacked jurisdiction to enter the contempt order of July 1982. His theory is based upon his interpretation of section 5—6—4(a)(3) of the Unified Code of Correc-

tions (Ill. Rev. Stat. 1981, ch. 38, par. 1005—6—4(a)(3)). That statute provides in pertinent part:

> "Personal service of the petition for violation of probation or the issuance of such warrant, summons or notice shall toll the period of probation, conditional discharge or supervision until the final determination of the charge, and the term of probation, conditional discharge or supervision shall not run until the hearing and disposition of the petition for violation."

He maintains that the State cannot extend the period of probation by filing a petition to revoke and that the tolling provided by the statute means only that the court retains jurisdiction to punish a defendant who has violated the terms of his probation during its original period. As applied to the instant case, he argues that the original term was for two years commencing September 12, 1979, and expiring September 12, 1981; he had served 15 months when the summons on the first petition to revoke was served on December 12, 1980; that this matter was disposed of by denial of the petition on January 14, 1982; that the period of probation continued to run without tolling and expired in September 1981; therefore, the rule of July 1982 was beyond the period and void.

The State, *contra*, maintains that the language of the statute is plain; that the service of the summons in December 1980 tolled the period of probation after 15 months had been served and nine months remained in its term; that the nine months did not begin to run until the disposition of the petition to revoke in January 1982 and would then expire in October 1982; hence, the rule of July 1982 was timely.

Defendant's theory derives largely from the wording of predecessor statutes. Section 117—3 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1965, ch. 38, par. 117—3) provided:

> "(a) When within the period of probation a petition charging a violation of a condition of probation is presented to the court which admitted the person to probation the court may issue a warrant for the arrest of the probationer.
>
> (b) When a warrant is issued the court shall within a reasonable time after the apprehension of the probationer conduct a hearing on the issue of the probation violation. * * *."

> "Effective August 11, 1967, the following language was added to section 117—3(a): 'The issuance of such warrant shall toll the running of the probation period until the final determination of the charge, but shall not operate to expand the period of probation of any probationer whose probation is not revoked as a result of the hearing.' " *People v. Dawes* (1972), 52 Ill. 2d

121, 124, 284 N.E.2d 629, 630-31.

This statutory language was further modified effective November 14, 1973, as follows:

"The issuance of such warrant or summons shall toll the sentence of probation or of conditional discharge until the final determination of the charge, and the term of probation or conditional discharge shall not run so long as the offender has not answered the summons or warrant." Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—4(a).

A minor change in language was added in 1976 when supervision was added to the dispositions. A more significant modification was made by Public Act 81—815, effective January 1, 1980. This struck the language, "so long as the offender has not answered the summons or warrant" and substituted what now appears, "until the hearing and disposition of the petition for violation." This provision was in effect at the time of the service of summons in the instant case, December 12, 1980.

■ The statutory track remains consistent in tolling the period; only the length of time and conditions vary: from "reasonable time" (1965), to "final determination" (1967), to "answer[ing] the summons or warrant" (1973), to "hearing and disposition" (1980). The general pattern is one of extending the tolled period; this is a clear legislative prerogative; the repeal of the provision in the 1967 version against expansion of the period of probation for one found not guilty of violation strongly suggests legislative disenchantment with that principle. The present statute is plain on its face; probation is tolled until hearing and disposition; and no time limit is placed on the latter.

■ Defendant suggests that allowing the State to extend a period of probation by filing a petition for violation is a deprivation of liberty without due process. In the first place, there is no indication in this record that the petitions for violation were filed arbitrarily and without cause. Secondly, while probation does not constitute absolute liberty, it includes most of the core values of unqualified liberty. (*Morrissey v. Brewer* (1972), 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593.) So long as he substantially abides the conditions of probation, his liberty is not infringed. The filing of a petition for violation is no proof of guilt, but if circumstances necessitate such a filing, the legislature has seen fit to toll the period of probation during its pendency. This is a fairly mild penalty when compared with the law prior to the Criminal Code of 1961. In an earlier day, upon the filing of a motion to revoke probation, the motion was allowed *instanter* and a rule was entered on the defendant, who then had the burden of proof, to show

cause why sentence should not be imposed on the original conviction. Ill. Rev. Stat. 1957, ch. 38, par. 789.

■■ The record here carries the clear implication that both the State and the trial court were doing everything possible to get the defendant to comply. The first two procedures were modifications; two petitions to revoke were held in abeyance while the defendant was making payments and were finally denied upon the imposition of the light punishment of two days in jail after a full hearing and the furnishing of counsel. It lies poorly in the mouth of the defendant now to claim a lack of either due process or fundamental fairness.

The jurisdictional argument is without merit.

■■ Defendant next claims that the trial court erred in not admonishing him under Supreme Court Rules 401 and 402(a) (87 Ill. 2d Rules 401, 402(a)). Suffice it to say that these rules apply to those accused of offenses under the Criminal Code of 1961; the matter at hand is contempt for which the requirements were set forth in *People v. Javaras* (1972), 51 Ill. 2d 296, 300, 281 N.E.2d 670, 672, being (1) information as to the charges, (2) opportunity to answer, and (3) a full hearing thereon. All three were met here.

We turn next to the crux of this case: the procedures used in pursuit of the rule. The record is unclear as to why the State, after pursuing petitions to revoke over a long period of time, turned to a rule to show cause.

■■ ■ It has been established that the contempt power of a trial court may be exercised as a sanction for violation of probation. (*People v. Patrick* (1980), 83 Ill. App. 3d 951, 404 N.E.2d 1042.) *Patrick* dealt with a failure to report to the probation officer, hence the court interpreted it as an indirect criminal contempt and explained the difference between direct and indirect criminal contempt. In the instant case we have a failure to pay costs and restitution. As suggested by the specially concurring justice in *Patrick*, this constitutes a civil contempt. We say this advisedly, bearing in mind the statement of the supreme court:

> "The lines of demarcation between direct and indirect contempt, and between criminal and civil contempt can be, and are, in many instances, very indistinct and even imperceptible, for the simple reason that many acts involve the elements of both, and, as a consequence, confusion has resulted in the court's attempts to classify them." *People v. Gholson* (1952), 412 Ill. 294, 298-99, 106 N.E.2d 333, 336.

■■ In general, criminal contempts are aimed at vindicating the authority and dignity of the court and the penalties are punitive; civil

contempts are remedial, coercive and punitive. (*Gholson.*) One of the chief characteristics of civil contempt is that the contemnor must "hold the key to the cell," *i.e.,* he must have it within his power to purge himself by complying with the court's order.

In 17 C.J.S. *Contempt* sec. 93, at 268-69 (1963), it is stated:

"If imprisonment is imposed for civil contempt it must ordinarily be coercive or remedial in nature rather than punitive. Imprisonment for civil contempt usually is not for a definite term, but the party in contempt stands committed unless and until he performs the affirmative act required by the order of the court. It is for this reason that in civil contempt it is stated that the contemnor carries the key of his prison in his pocket."

In *Eastman v. Dole* (1919), 213 Ill. App. 364, 370, the appellate court stated flatly, "Any order prescribing a fine or imprisonment, or both, in a case of civil contempt should be made conditional upon compliance with the terms of the original order." See generally 12 Ill. L. & Prac. *Contempt* sec. 80 (1955).

This "key" is full payment of what is due under the order. Partial payment or inability to pay does not go to the question of purgation, but rather to the question of wilfulness which is anterior to the incarceration.

This doctrine of civil contempt has been codified in sections 5—9—3(a) and (b) of the Unified Code of Corrections (Ill. Rev. Stat. 1981, ch. 38, pars. 1005—9—3(a), (b)) regarding the default in the payment of fines. These sections provide:

"(a) An offender who defaults in the payment of a fine or in any installment may be held in contempt and imprisoned for nonpayment. The court may issue a summons for his appearance or a warrant of arrest.

(b) Unless the offender shows that his default was not due to his intentional refusal to pay, or not due to a failure on his part to make a good faith effort to pay, the court may order the offender imprisoned for a term not to exceed 6 months if the fine was for a felony, or 30 days if the fine was for a misdemeanor, a petty offense or a business offense. Payment of the fine at any time will entitle the offender to be released, but imprisonment under this Section shall not satisfy the payment of the fine."

■ Thus the statute, as well as the case law (*People v. Wilcox* (1955), 5 Ill. 2d 222, 125 N.E.2d 453), establishes that civil contempt must be wilful. Under the statute the burden of proof is on the contemnor to negate this element. The statute concerns fines, *i.e.,* the

payment of money, while the instant case concerns costs and restitution, *i.e.*, the payment of money; we see no qualitative difference between the two, especially since costs and restitution are much less penal in nature than a fine and more clearly resemble nonpayment in a purely civil proceeding, *e.g.*, nonpayment of child support or maintenance, for which imprisonment as an indirect civil contempt is a familiar remedy.

As we have previously intimated, the instant case is not clear-cut; it is an indirect contempt since the actions of the defendant took place outside the presence of the court; however, the line between criminal and civil is blurred; it is criminal in the sense that it grows out of a criminal conviction and is a disobedience of a lawful court order; it is civil in the sense that the only defalcation is the nonpayment of money; on balance, we believe it is properly classified as an indirect civil contempt.

The proceedings here must be judged in the light of these principles. We find them sufficiently blemished as to require *vacatur* of the sentence.

██ The first problem has to do with the question of wilfulness. "As we view it, the existence of an order of the court and proof of wilful disobedience are essential to a contempt of the latter type. [Indirect contempt.]" (*People v. Wilcox* (1955), 5 Ill. 2d 222, 228, 125 N.E.2d 453, 456.) This is the usual rule in ordinary cases. However, the instant case derives from the statute by analogy, as we have already indicated, and the statute places the burden on the defendant to establish lack of wilfulness. It is therefore sufficient in cases of fines, costs and restitution growing out of a criminal proceeding to allege, as the People did here, that the defendant has "neglected and refused" to comply with the court's order to pay costs and restitution. The entire petition for rule is directed at costs and restitution.

However, a divergency then begins to appear in the record. The defendant, in addition to appearing in response to the rule, was apparently also in court on an ordinance violation. In colloquy with the court, the defendant indicated that he had talked to the public defender by telephone. The court then indicated that counsel would not be appointed on the ordinance violation, but the court stated, "I will then appoint the Public Defender to represent you in all but the ordinance violation." The defendant then entered a plea of guilty to the ordinance violation and was fined $50 and costs on that charge.

██ The court then proceeded immediately to the rule and asked the defendant whether he wished to admit or deny the allegations of the rule. The defendant, *pro se*, stated that he would admit owing

$245.55, and the court forthwith held him in contempt and proceeded without a pause to the sentencing hearing. Fundamental fairness dictates that at a minimum the defendant be advised that he had the opportunity to prove that the nonpayment was not wilful.

The sentencing hearing was entirely taken up with establishing that the defendant had not remained steadily employed, a further condition of his probation. However, this was not the issue under the pleadings. By docket entry the court found that the defendant had "wilfully failed and refused to remain steadily employed and to pay fines and court costs." The record may sustain a finding of wilfulness as to failure to remain steadily employed, but it falls far short of like wilfulness as to the failure to pay costs and restitution.

██ Thirdly, and most significantly, the written order of commitment which supplants the docket entry is in the form of an ordinary *mittimus*. It recites that the defendant was found guilty by "verdict" and directs that he be incarcerated for 158 days for "contempt." Even under the most liberal construction this document is fatally deficient. (*Eastman*; Ill. L. & Prac. *Contempt*.) It does not show the jurisdiction of the court, it does not recite the facts upon which the contempt was based (*Wilcox*), it does not find that the conduct was wilful, and most importantly it does not provide any means whereby the defendant may purge himself.

██ The inherent power of contempt is a powerful one; it is not to be used lightly nor when other adequate remedies are available; if it is used, it must conform strictly to the dictates of the law. It is a matter of deep concern to us that although the defendant here appeared to be liable, the mechanics of the matter were so mishandled that the proceedings must be vacated. "[T]he record falls short of the due process and fundamental fairness to which [defendant] was entitled." *People v. Wilcox* (1955), 5 Ill. 2d 222, 230, 125 N.E.2d 453, 457.

It is to be hoped that if in the future the rule to show cause be used in lieu of a petition to revoke in such cases, all those involved be aware of the more stringent requirements of proceeding via the contempt route.

██ It remains to be decided what disposition to make of this case. Ordinarily we would remand to the trial court for further proceedings. However, as we have indicated above, the defendant's period of probation expired in October 1982 and on that date the trial court lost jurisdiction of the matter. There is no provision in the statute for the period of probation being tolled upon the filing of a rule as is the case upon filing of a petition to revoke. The trial court could take no further action in the matter and so far as the record dis-

closes, the defendant has served the 158 days. Even if sentence were properly reimposed, credit for time served would clearly obviate any further sentence. The State must be left to its civil remedies for the collection of money judgments. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—9—3(e).) We therefore conclude that the matter is at an end.

Proceedings and sentence vacated.

MILLS, J., concurs.

JUSTICE MILLER, concurring in part and dissenting in part:
I agree with the majority that the circuit court had jurisdiction to enter the contempt order of July 19, 1982, and that the proceedings in the circuit court were flawed. I disagree, however, with the conclusions that the contempt was necessarily civil and that this matter ended with the expiration of the defendant's term of probation.

The classification of contempts as criminal or civil turns on what kind of sanction—punitive or coercive—is the more appropriate answer to the contemnor's act. Punishment is imposed when the contemnor affronts the dignity of the court, hinders its proceedings, or brings the administration of justice into disrepute. Coercion is imposed to induce the contemnor to do a required act.

The majority finds the contempt in the present case on balance to be civil; the parties in their briefs treat it as criminal. I believe it can be treated as either. In many cases it may be difficult to determine whether a punitive or coercive sanction is more appropriate, though in some cases the only logical sanction is punitive (see *People v. Marcisz* (1975), 32 Ill. App. 3d 467, 334 N.E.2d 737, *aff'd in part, rev'd in part on other grounds sub nom. Marcisz v. Marcisz* (1976), 65 Ill. 2d 206, 357 N.E.2d 477 (violation of prohibitory injunction)). In this case, either punitive or coercive sanctions would have been proper. As the history of the defendant's probation shows, the circuit court and the State exhibited great patience. When coercive measures fail, punishment may be proper. The provisions in the Unified Code of Corrections on default in the payment of fines do not limit the circuit court's power to classify the contempt here as criminal: the contempt power is an inherent one in the judicial branch and need not be provided for, nor may it be restricted, by the legislature (*In re G.B.* (1981), 88 Ill. 2d 36, 430 N.E.2d 1096).

For the reasons indicated, I believe the contempt here may be treated as criminal as an alternative to the revocation of probation, or as a civil contempt if the court's purpose is to induce the defendant to

comply with the orders of payment.

The majority mentions that the requirements of contempt proceedings are more stringent than those that apply to a petition to revoke probation. I believe that is true for indirect criminal contempts but not for indirect civil contempts.

In the case of an indirect criminal contempt, the contemnor is entitled to certain constitutional protections, including the right to notice, the right to file an answer, a reasonable opportunity to defend, the assistance of counsel, the right to be proved guilty beyond a reasonable doubt, and the right not to be compelled to testify against himself. (*Marcisz.*) In an indirect criminal contempt, the failure to comply with an order of court must be wilful and the State has the burden of proving wilfulness beyond a reasonable doubt (*People v. Witherspoon* (1977), 52 Ill. App. 3d 151, 367 N.E.2d 313). In a criminal contempt in which the sentence imposed exceeds six months' imprisonment or a $500 fine, the record must disclose that the contemnor either had or was offered a trial by jury. (*County of McLean v. Kickapoo Creek, Inc.* (1972), 51 Ill. 2d 353, 282 N.E.2d 720; *Aurora Steel Products v. United Steelworkers of America* (1981), 94 Ill. App. 3d 97, 418 N.E.2d 492.) In an indirect civil contempt, the contemnor need not be proved guilty beyond a reasonable doubt, but rather by the preponderance or greater weight of the evidence. In an indirect civil contempt proceeding involving the failure to comply with an order or decree, the burden may shift to the contemnor to prove his inability to comply with the order (*Dishinger v. Bon Air Catering, Inc.* (1949), 336 Ill. App. 557, 84 N.E.2d 562), but he must still be afforded an opportunity to show cause why he should not be held in contempt.

Because the defendant in the present case was afforded neither the constitutional protections to which he would be entitled in an indirect criminal contempt proceeding nor an opportunity to show cause why he should not be held in contempt, which is required in an indirect civil contempt proceeding, I agree with the majority that the circuit court's finding of contempt must be reversed. Further, if it was the intention of the circuit court to punish the defendant for criminal contempt, then the sentence of imprisonment for a fixed period of time imposed in the present case was appropriate; if it was the intention of the court to impose a coercive sanction, then the sentence imposed must be conditioned on compliance with the original order.

Unlike the majority, I would require substantial compliance with the applicable provisions of Supreme Court Rules 401 and 402 in indirect criminal contempt proceedings. Although the procedural safeguards surrounding the prosecution of criminal contempts "do not de-

rive from the Sixth Amendment" (*Levine v. United States* (1960), 362 U.S. 610, 616, 4 L. Ed. 2d 989, 995, 80 S. Ct. 1038, 1042), I see no reason to distinguish in this regard indirect criminal contempts from other criminal proceedings, for "[c]riminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both" (*Bloom v. Illinois* (1968), 391 U.S. 194, 201, 20 L. Ed. 2d 522, 528, 88 S. Ct. 1477, 1481). Supreme Court Rules 401 and 402 are designed to set forth on the record that the defendant has received the necessary admonitions preceding his waiver of various constitutional rights. (*People v. Warfel* (1979), 67 Ill. App. 3d 620, 385 N.E.2d 175.) Should a person charged with indirect criminal contempt wish to waive his constitutional due process rights, substantial compliance with the applicable provisions of these rules will ensure a clear record. *In re K.S.Y.* (1981), 93 Ill. App. 3d 6, 11, 416 N.E.2d 736, 740 (Green, J., concurring in part and dissenting in part); see *Kickapoo Creek*.

I also disagree with the majority's assertion that the expiration of the defendant's probation affects the jurisdiction of the circuit court following the disposition of this appeal. The circuit court lost jurisdiction over this matter when the defendant filed his notice of appeal, not when his probation expired. The expiration of probation should have no effect here, for the contempt is a separate proceeding and the circuit court's order was final and appealable (*People ex rel. Scott v. Silverstein* (1981), 87 Ill. 2d 167, 429 N.E.2d 483; see *Archer v. Archer* (1979), 71 Ill. App. 3d 938, 390 N.E.2d 629). I would also construe the fine and restitution ordered here in combination with the defendant's probation as independent dispositions that survive the expiration of the period of probation.

For the reasons indicated, I would reverse the finding of contempt, and remand the cause to the circuit court for further proceedings.