NO. 4-97-0083

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellee, ) Circuit Court of

v. ) Champaign County

TRINI WILSON, ) No. 94T8325

Defendant-Appellant. )

) Honorable

) Jeffrey B. Ford,

) Judge Presiding.

_________________________________________________________________

JUSTICE COOK delivered the opinion of the court:

On July 26, 1994, defendant Trini Wilson pled guilty to the offense of driving under the influence of alcohol and was sentenced to probation for 18 months.  The probation order re­quired that he (1) serve 120 days in jail (with credit for 14 days served); (2) complete 75 hours of outpatient alco­hol/drug treat­ment and aftercare; and (3) attend three Alcoholics Anony­mous (AA) meetings per week for 30 weeks.  The probation order also stated that defen­dant was to serve 20 days of the jail time  immedi­ate­ly and to attend a remissions hearing beginning in Novem­ber 1994.  Al­though it is unclear from the probation order, it appears the purpose of the remission hearings was to supervise defendant's compliance with the AA and drug treatment conditions, with the possibility that some or all of the 120 days' jail time would be forgiven if he complied.

From the beginning, defendant failed to comply with the probation conditions.  At the first remission hearing, on Novem-

­ber 18, 1994, defendant presented proof that he had attended only nine AA meetings and the court ordered him to serve two more days of the 120-day sentence.  The defendant failed to appear at the next scheduled remission hearing, so the second remission hearing was not held until May 16, 1995.  There the court discov­ered defen­dant had been discharged from substance-abuse treatment against staff advice "due to lack of participation in treatment" and ordered him to serve an additional 14 days.

At the third remission hearing, on June 28, 1995, and the fourth remis­sion hearing, on July 14, 1995, defendant showed compliance with the AA and drug treatment conditions and was not incarcerat­ed.  However, on August 23, 1995, defendant was found to have committed the offense of driving on a revoked license.  He failed to appear at the next remission hearing.  The fifth remission hearing was finally held on February 21, 1996.  Defen­dant pro­duced no documentation and was ordered to serve the rest of his 120-day jail sentence.  Eight days after the hearing, on Febru­ary 29, 1996, defendant's probation period expired.

On April 15, 1996, 45 days after defendant's probation expired, the State filed a petition for rule to show cause why the defendant should not be held in indirect civil contempt.  On September 3, 1996, the trial court found defendant in indirect civil contempt for willfully failing to comply with the AA and drug treatment orders.  The contempt order required defen­dant to attend the previously ordered AA meet­ings and treat­ment by October 28, 1996, or he would be remanded to jail until he purged his contempt.  The court later clarified the order, at defendant's request, by another order of January 24, 1997, stating that the literal lan­guage of the order did not reflect the practice of the court.  The court clarified that if defendant was jailed for not purging his contempt, he would be afford­ed a hearing within 21 days to demon­strate his willing­ness to comply with the court's order if released.  On January 16, 1997, defen­dant was discharged from probation.  Defendant filed a notice of appeal on January 29, 1997, and was granted a stay pending appeal on February 20, 1997.

Defendant argues the trial court lacked subject-matter jurisdic­tion to find him in civil contempt because his proba­tion period had expired.  Additionally, defendant argues that even if the court had juris­diction, the particular order of civil con­tempt was not coercive in nature.  The order was puni­tive because it poten­tially impris­oned defendant for periods of time in which he could not obtain immediate release by compli­ance with the proba­tion order.  

It is generally said that a court's jurisdiction ends with the proba­tion expiration date.  
People v. Mowery
, 116 Ill. App. 3d 695, 704, 452 N.E.2d 363, 370 (1983); 
People v. John­son
, 265 Ill. App. 3d 509, 511, 637 N.E.2d 700, 701 (1994). 
 Once the probation period ends, the defendant may stop looking over his shoulder and is assured that the State will not seek the stronger sentence the court originally could have imposed.  At that point, proba­tion is terminated and there is nothing left to revoke or modify.  
People v. Randolph
, 98 Ill. App. 3d 696, 699, 424 N.E.2d 893, 895 (1981).  

However, this general rule only applies to revocation or modification of probation.  In some instances, a court may retain subject-matter jurisdic­tion to enforce unfulfilled condi­tions of proba­tion after the probation period has expired. See  
People v. Brown
, 
142 Ill. App. 3d 712, 713, 492 N.E.2d 238, 239 (1986); 
People v. Draves
, 149 Ill. App. 3d 657, 659, 500 N.E.2d 1072, 1073 (1986); 
People v. Bertalot
, 164 Ill. App. 3d 89, 93, 518 N.E.2d 467, 470 (1987); 
Mowery
, 116 Ill. App. 3d at 707, 452 N.E.2d at 372 (Miller, J., concurring in part and dissenting in part).  Trial courts may use their contempt power after the proba­tion period to enforce condi­tions of proba­tion that can survive "inde­pen­dently" of the probation order.  
Draves
, 149 Ill. App. 3d at 659, 500 N.E.2d at 1073; 
Bertalot
, 164 Ill. App. 3d at 92-93, 518 N.E.2d at 470; 
Mowery
, 116 Ill. App. 3d at 707, 452 N.E.2d at 372 (Miller, J., concurring in part and dissenting in part).

In 
Mowery
, the trial court found defen­dant in con­tempt for ne­glect­ing to pay court costs and restitu­tion as part of his sentence of probation. 
 
Mowery
, 116 Ill. App. 3d at 697, 452 N.E.2d at 365.  Justice Miller stated:

"The expira­tion of proba­tion should have no effect here, for the contempt is a separate proceeding ***.  I would also construe the fine and resti­tution or­dered here *** as 
indepen­dent
 
dispo­sitions
 that survive the expira­tion of the period of proba­tion."  

(Emphasis added.)
  
Mowery
, 116 Ill. App. 3d at 707, 452 N.E.2d at 372 (Miller, J., con­curring in part and dissenting in part).

Subsequent cases have adopted Justice Miller's position
.
  
Draves
, 149 Ill. App. 3d at 659, 500 N.E.2d at 1073; 
Bertalot
, 164 Ill. App. 3d at 92, 518 N.E.2d at 470.

In 
Bertalot
, the court
 held that 
mone­tary condi­tions, such as fines and resti­tution, survived proba­tion
 because they were "inde­pen­dent dispo­si­tions."  
Bertalot
, 
164 Ill. App. 3d at 92-93, 518 N.E.2d at 470.  In deter­mining whether a probation condition was an "inde­pendent disposition," the court 
looked to section 5-5-3(b) of the Unified Code of Correc­tions (Code) (730 ILCS 5/5-5-3(b) (West 1996)).  Section 5-5-3(b) lists eight punish­ment options that are appro­priate disposi­tions in criminal cases.  730 ILCS 5/5-5-3(b) (West 1996).  
Bertalot
 held that because fines and resti­tu­tion were available on this list as sentencing alter­natives, they were dispo­si­tions that could stand alone inde­pen­dent of a proba­tion order.  
Bertalot
, 164 Ill. App. 3d at 92-93, 518 N.E.2d at 470.  Con­versely, because public service work was not available as a sentencing option under section 5-5-3(b), but available only as a probation condi­tion under section 5-6-3(b), it was not an inde­pen­dent disposi­tion.  
Bertalot
, 164 Ill. App. 3d at 93, 518 N.E.2d at 470.  
Bertalot
 went on to state in 
dicta
 that 
only
 mone­tary condi­tions survived because the statu­tory contempt provi­sion of section 5-9-3 of the Code (730 ILCS 5/5-9-3 (West 1996)) ex­pressly pro­vides that fines can be en­forced through con­tempt but makes no mention of nonmon­e­tary condi­tions.  
Bertalot
, 164 Ill. App. 3d at 93-94, 518 N.E.2d at 470-71.

We agree with 
Bertalot
 to the extent that to survive the period of probation as an independent disposition, the punishment must exist as a sentencing alter­native under section 5-5-3(b) of the Code.  Forms of punishment that can only be imposed in conjunction with probation orders cannot survive once that probation order has expired.  Defendant's AA and drug treat­ment condi­tions here are not sen­tencing alter­na­tives under section 5-5-3(b).  They are only available in conjunc­tion with a probation order pursuant to section 5-6-3(b).  730 ILCS 5/5-6-3(b) (West 1996).  Therefore, when defendant's probation period ex­pired, the trial court lacked subject-matter juris­dic­tion to enforce those condi­tions.  The order of con­tempt must be re­versed.    

We dis­agree with 
Bertalot
, howev­er, that only mone­tary condi­tions can survive probation.  We believe that certain non-mone­tary punishments, such as a specif­ic jail term, may be en­forced after probation, if they are "independent conditions" under section 5-5-3(b).  See 
Brown
, 
142 Ill. App. 3d 712, 492 N.E.2d 238.  Section 5-9-3(b) autho­rizes the use of con­tempt to enforce the payment of a fine, but does not rule out the possi­bili­ty that con­tempt may be used to enforce other condi­tions of proba­tion after the period ex­pires.  730 ILCS 5/5-9-3(b) (West 1996).  The purpose of section 5-9-3 is to limit how long a court may impris­on someone in an attempt to coerce him or her to pay a fine.  The section did not address the use of con­tempt to enforce nonmonetary condi­tions because it was not necessary.  When a court forces a proba­tioner to fulfill a specif­ic jail term, use of the contempt power is unnecessary.  The court simply puts the defen­dant in jail for the specified term.  Any of the independent disposi­tions set out in section 5-5-3(b) may be enforced after the expiration of the probation period, whether monetary or non-monetary.   

We reverse (1) because the court was attempting to enforce conditions of probation after the expiration of the period of probation, and those conditions were not independent of proba­tion.  Our rever­sal of the trial court is also based (2) on the ambigu­ity of the partic­u­lar proba­tion order.  The proba­tion order does not state whether the AA and drug treatment conditions were intended to survive the probation­ary period.  One possible view is that these conditions were intended as alterna­tives to the 120 days' jail time and now are fore­closed from enforcement because defendant has already served the 120 days.  This uncer­tainty breaches the rule that "a defen­dant is entitled to know precisely what his sentence is [citation], and those charged with  execu­tion of the sentence must be able to ascertain its mean­ing."  
Brown
, 
142 Ill. App. 3d at 714, 492 N.E.2d at 240 (Harrison, J., dissenting).  Howev­er, we would also reverse the trial court on point (1) even if the ambiguity of the probation order were not pres­ent.   

For the reasons above stated, we reverse the judg­ment of the circuit court of Champaign County.

Reversed.

McCULLOUGH, P.J., and STEIGMANN, J., concur.