Docket Nos 95408, 95803 cons.–Agenda 7–November 2003.

THE CITY OF URBANA, Appellee, v. ANDREW N.B., Appellant.–THE CITY OF CHAMPAIGN, Appellee, v. MONTRELL D.H., Appellant.

Opinion filed June 24, 20004.

JUSTICE FITZGERALD delivered the opinion of the court:

In separate proceedings, Andrew N.B and Montrell D.H., both minors, entered uncounseled guilty pleas to violating municipal ordinances in the Cities of Urbana and Champaign and received dispositions of court supervision. When they violated the terms of their supervision, the Cities filed contempt petitions. The trial court found the minors in contempt and sentenced them to detention; the appellate court affirmed. The minors appealed, and we consolidated their cases. For the reasons that follow, we reverse and remand.

BACKGROUND

Though the facts in each case are similar, we review them separately to set the stage for our analysis.

Andrew N.B.

On April 20, 2001, the City of Urbana filed a complaint in the Champaign County circuit court against 12-year-old Andrew N.B., alleging that he had committed theft in violation of the municipal code. See City of Urbana Code of Ordinances §15–32(a)(1) (1980). Specifically, Andrew stole a hundred dollar bill from his grandmother. A violation of this ordinance is punishable by a fine not exceeding $500, by restitution, or by court supervision “as defined in the Uniform Code of Corrections.” See City of Urbana Code of Ordinances §§1–10(b), (f), (g) (1980).

Andrew, accompanied by his father, appeared with an unspecified number of others, both minors and adults, charged with ordinance violations at a Champaign County circuit court call referred to as “city court.” The trial court told the assembled defendants, “I’m going to advise you as to what the charges are, what the possible penalties are, and then I’m going to need to know what you wish to do”–plead guilty or not guilty. The court directed those who wanted to plead guilty to read a document detailing their rights. When the court called Andrew’s case, it described the charge against him and the range of punishments: a fine of up to $500, community service, and other conditions, such as attending school, as ordered by the court. Andrew pleaded guilty. After admonishing him about the consequences of his plea, the trial court accepted it. The City recommended a “sentence” of one year of court supervision under “standard conditions of minding the household rules, attending school without unexcused absences and without any disciplinary problems.” The City acknowledged that Andrew had returned $90 to his grandmother, but asked for restitution of the remaining $10, as well as an apology letter. The court followed the City’s recommendation and added:

“What you need to understand is that if you don’t do these things and come back here, the City can ask that you be held in contempt. And that’s different than what you’re here for. You can’t be locked up right now. But if you’re found to be in contempt of court, I can put you in the Detention Center for six months. *** And you have to go to school there, and you won’t be late to school there.

So you have a choice to make. You’re either going to do it the way you should do it or you’re going to do it anyway except you’re going to be locked up.”

Andrew chose the latter option within a week. He skipped school on May 4, 7, and 8 and visited Springfield on May 8 without his mother’s permission. The City filed an indirect criminal contempt petition and waived any detention greater than six months or any fine greater than $500, and the trial court appointed counsel for Andrew.

Andrew filed a motion to dismiss the City’s petition for lack of subject matter jurisdiction. Andrew asserted that the Juvenile Court Act of 1987 is implicated once a minor faces incarceration. Under the Act, the court must conduct an adjudicatory hearing to determine whether the minor should be made a ward of the court before sentencing the minor to detention. Here, according to Andrew, the court lacked subject matter jurisdiction because it lacked “the power to determine whether the minor should be adjudged a ward of the court. *** The contempt power may not be used to enforce supervisory orders on a minor until the minor has been adjudicated a ward of the court.”

The trial court denied Andrew’s motion, stating,

“We are not proceeding under the Juvenile Court Act. We are proceeding in a violation of an appropriate order which the court can enforce. That is the contempt power. It is the inherent power of the court. It is not a criminal law violation. It is not categorized as a felony or misdemeanor or anything else. *** Because the defendant violates an otherwise valid court order, does that now mean–I think what the defendant is arguing is you have to drop back and file a juvenile petition in this matter for contempt and I don’t believe that that’s what the Juvenile Court Act says to be able to have somebody incarcerated. And I think the court inherently can enforce its orders without having a juvenile petition filed.”

The court then found Andrew in contempt for violating the terms of his court supervision and sentenced him to 12 months’ probation and 180 days’ detention–eight days to be served immediately, and the remainder subject to remission. For subsequent violations of the court’s order, Andrew served an additional 47 of the 180 days.

Andrew appealed, arguing, 
inter alia
, that section 5–125 of the Juvenile Court Act (705 ILCS 405/5–125 (West 2002)), which allowed the City to file its own ordinance violation complaint rather than ask the State to file a delinquency petition, violates equal protection and due process. The appellate court affirmed. 335 Ill. App. 3d 180. The court held that section 5–125 does not violate equal protection. 335 Ill. App. 3d at 187. The court posited two minors–one subject to a delinquency petition and one subject to a municipal ordinance violation complaint–and stated:

“The two minors are [not] in the same situation. Unlike the minor in the city’s case, the minor in the juvenile case faces a possibility of detention for up to 30 days [citation], removal from the custody of his or her parents or guardians [citation], and placement into the custody of some other person or agency [citation]. *** The legislature could have reasonably concluded that the minor in juvenile court should have the right to appointed counsel and the other minor should not, because the minor in juvenile court faces weightier potential consequences.” 335 Ill. App. 3d at 186-87.

The appellate court further held that section 5–125 does not violate due process. 335 Ill. App. 3d at 188. The court noted that, although the City prosecuted Andrew for theft, “the trial court did not sentence him to incarceration for that offense, and incarceration was not even a possibility under the ordinance.” 335 Ill. App. 3d at 188. “Supervision was not imprisonment,” and because the sixth amendment bestows a right to counsel only when the defendant receives a sentence of actual imprisonment, due process did not require appointed counsel when Andrew entered his guilty plea. 335 Ill. App. 3d at 188.

We granted Andrew’s petition for leave to appeal. 177 Ill. 2d R. 315.

Montrell D.H.

On June 28, 2001, the City of Champaign filed a complaint against 15-year-old Montrell D.H., alleging that he had violated curfew. See Champaign Municipal Code §23–211(b) (1985). A violation of this ordinance is punishable by a fine not exceeding $750, by 20 to 100 hours of public service work, by restitution, or by court supervision “as defined in the Uniform Code of Corrections.” See Champaign Municipal Code §§1–21(b), (e), (f) (1985). The Code itself does not provide for incarceration, but it does note that a person who fails to pay a fine may be “subsequently incarcerated for contempt of court.” Champaign Municipal Code §1–21(g) (1985).

Like Andrew, Montrell appeared in city court with his mother and an unspecified number of others charged with ordinance violations. The trial court advised the assembled defendants of their right to present evidence, confront witnesses, and testify on their own behalf, as well as their right to retained counsel, noting, “This is not a case where I can appoint a Public Defender to represent you.” The trial court called Montrell’s case and described the charges against him. Montrell pleaded guilty; the court admonished him about the consequences of his plea and accepted it. The City recommended a sentence of six months of court supervision and 20 hours of public service. The City also asked the court to order Montrell not to violate any criminal statutes or municipal ordinances, to attend school, and to follow household rules, including the curfew imposed by his mother. The court followed the City’s recommendation.

Just more than a month later, Montrell left home without permission for 11 days between August 3 and August 14, 2001. On August 14, he stole two compact discs, a T-shirt, and a pair of shorts from a discount store. He again left home without permission for five days between August 17 and August 22, 2001. The City filed an indirect criminal contempt petition, and the trial court appointed counsel for Montrell.

Montrell filed a motion to dismiss the City’s petition, echoing the subject matter jurisdiction arguments made by Andrew: “The Juvenile Court Act specifically precludes minors from being jailed unless they are delinquents or a ward of the court. The Municipal Court lacks jurisdiction to place a minor in the Juvenile Detention Center because only minors who are delinquents or wards of the court can be placed there.” The court denied Montrell’s motion to dismiss, found him in contempt for violating the terms of his court supervision, and sentenced him to 12 months’ conditional discharge and 60 days’ detention–three days to be served immediately, and the remainder subject to remission.

Montrell appealed, arguing that section 5–125 of the Juvenile Court Act violates equal protection and due process. The appellate court followed its earlier decision in Andrew’s case and affirmed. In dissent, Justice Cook argued that section 5–125 mandates any detention of a juvenile for a municipal ordinance violation must comply with the protections offered by article V of the Act:

“It makes sense that a minor can be prosecuted for a minor municipal ordinance violation just like anyone else, without the necessity of commencing a Juvenile Court Act proceeding. The juvenile defendants in these cases [Andrew and Montrell], however, were not prosecuted just like anyone else. The court did not employ indirect criminal contempt as a method to collect the fine, but as a substitute juvenile court, as a means of guiding the actions of the juvenile defendants. The court’s actions seem well-intentioned but the court should not have evaded the provisions of the Act. An indirect criminal contempt proceeding is essentially a misdemeanor criminal proceeding. [Citation.] The Act must be followed if a juvenile is prosecuted for a criminal misdemeanor.

Even more basically, how can an ordinance violation with a maximum punishment of a $75 [
sic
] fine be transformed, by going the indirect criminal contempt route, into an offense carrying at least 8 days of jail time and perhaps 180 days of jail time? The court is entitled to take reasonable steps for the collection of the $75 [
sic
] fine but that was not its goal in these cases.” 336 Ill. App. 3d 558, 560-61 (Cook, J., dissenting).

We granted Montrell’s petition for leave to appeal (177 Ill. 2d R. 315) and consolidated the two cases.

ANALYSIS

Andrew and Montrell raise three issues: (1) whether section 5–25 violates equal protection, (2) whether their uncounseled guilty pleas violated due process, and (3) whether these pleas violated Supreme Court Rule 403, section 113–5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/113–5 (West 2002)), and section 1–5 of the Juvenile Court Act (705 ILCS 405/1–5 (West 2002)).

As the Cities correctly note, Andrew and Montrell did not raise their third issue below; accordingly, our review of that issue is waived. See 
Garza v. Navistar International Transportation Corp.
, 172 Ill. 2d 373, 383 (1996) (“ ‘[w]here the appellant in the appellate court fails to raise an issue in that court, this court will not address it’ ”), quoting 
Hammond v. North American Asbestos Corp.
, 97 Ill. 2d 195, 209 (1983). Further, juveniles subject to criminal proceedings have a right to counsel under Rule 403 (see 134 Ill. 2d R. 403 (“A person under the age of 18 years shall not, except in cases in which the penalty is by fine only, be permitted to enter a plea of guilty *** unless he is represented by counsel in open court”)) and section 113–5 of the Code of Criminal Procedure (see 725 ILCS 5/113–5 (West 2002) (“No person under the age of 18 years shall be permitted to plead guilty *** except where the penalty is by fine only unless he is represented by counsel in open court”)). Both the rule and the statute apply only to criminal defendants prosecuted by the State under the Criminal Code of 1961. These protections do not apply to defendants, like Andrew and Montrell, charged with municipal ordinance violations. See 725 ILCS 5/102–15 (West 2002) (defining “offense” for the Code of Criminal Procedure as “a violation of any penal statute of this State”); 
City of Chicago v. Wisniewski
, 54 Ill. 2d 149, 153 (1973); see also 
Village of Midlothian v. Walling
, 118 Ill. App. 2d 358, 363 (1969).

Finally, under section 1–5 of the Act, minors also have a right to counsel. See 705 ILCS 405/1–5(1) (West 2002) (“No hearing on any petition or motion filed under this Act may be commenced unless the minor who is the subject of the proceeding is represented by counsel”). Contrary to the dissent’s suggestion, however, section 1–5 does not give minors “the right to counsel at all proceedings,” but only proceedings under the Act. Andrew and Montrell were not prosecuted for a municipal ordinance violation by the State, the only party entitled to bring a petition under the Act, but by the Cities outside the Act. Section 1–5 provides no statutory right to counsel for these minors. We turn to the attendant constitutional issues.

Andrew and Montrell contend that section 5–125 violates equal protection because it allows municipalities to treat similarly situated minors differently. Specifically, they argue that section 5–125 allows municipalities to choose arbitrarily between referring ordinance violations involving minors to the State for prosecution under the Act, which offers procedural protections including the right to appointed counsel (see 705 ILCS 405/5–101(3) (West 2002) (in delinquency proceedings, “minors shall have all the procedural rights of adults in criminal proceedings, unless specifically precluded by laws that enhance the protection of such minors”), or filing their own ordinance violation complaints under the Municipal Code, which offers no such procedural protections.

Section 5–120 of the Act gives exclusive jurisdiction over delinquency proceedings to juvenile courts: “[N]o minor who was under 17 years of age at the time of the alleged offense may be prosecuted under the criminal laws of this State,” except as provided in four related statutory sections, including section 5–125. 705 ILCS 405/5–120 (West 2002). Section 5–125, entitled “Concurrent jurisdiction,” provides:

“Any minor alleged to have violated *** a municipal or county ordinance, may be prosecuted for the violation and if found guilty punished under any statute or ordinance relating to the violation, without reference to the procedures set out in this Article, except that any detention, must be in compliance with this Article.” 705 ILCS 405/5–125 (West 2002).

Thus, under section 5–125, the Cities could pursue their own cases against the minors as an alternative to requesting the State commence delinquency proceedings against them.

Equal protection guarantees that similarly situated individuals will be treated similarly, unless the government demonstrates an appropriate reason to do otherwise. See 
People v. Donoho
, 204 Ill. 2d 159, 176-77 (2003) (“Generally, equal protection requires the government to treat similarly situated people in a similar manner”). The shorthand we have developed for the degree of deference we give in evaluating the appropriateness of such a reason is the term “scrutiny.” In cases like one before us, where the statutory classification at issue does not involve fundamental rights, we employ so-called rational basis scrutiny and ask only whether the challenged classification bears a rational relation to a legitimate purpose. 
In re Detention of Samuelson
, 189 Ill. 2d 548, 562 (2000); 
People v. Fuller
, 187 Ill. 2d 1, 15-16 (1999).

As the Cites observe, the Municipal Code provides for two types of ordinance violations: those punishable by “fines or penalties as may be deemed proper” (see 65 ILCS 5/1–2–1 (West 2002)) and those punishable by incarceration (65 ILCS 5/1–2–1.1 (West 2002)). Prosecution of the latter offenses, like prosecution under the Act, involves heightened procedural protections. 65 ILCS 5/1–2–1.1 (West 2002) (“The prosecution shall be under and conform to the rules of criminal procedure”). That is, the available protections, including the right to appointed counsel, track the available punishments: where incarceration or detention is a sentencing option under either the Municipal Code or the Juvenile Court Act, the General Assembly has provided the right to counsel. The General Assembly also has decided to allow municipalities to proceed outside the Act and its concomitant protections when charging minors with ordinance violations that do not involve detention. As the appellate court in Andrew’s case aptly noted, prosecution by the State under the Act for an ordinance violation has more serious potential consequences for a minor–placement in the custody or guardianship of a suitable relative, other person, or agency (see 705 ILCS 405/5–710(1)(a)(ii), 5–740 (West 2002)); substance abuse assessment and treatment (see 705 ILCS 405/5–710(1)(a)(iii) (West 2002)); placement in the guardianship of the Department of Children and Family Services (see 705 ILCS 405/5–710(1)(a)(iv) (West 2002)); detention in a “juvenile detention home” for “a period not to exceed 30 days” (see 705 ILCS 405/5–710(1)(a)(v), 5–105(7) (West 2002)); suspension of driving privileges (see 705 ILCS 405/5–710(1)(a)(vii); and medical procedures to have street gang tattoos removed (see 705 ILCS 405/5–710(1)(a)(ix) (West 2002))–than a quasi-criminal prosecution by a municipality outside the Act. See 335 Ill. App. 3d at 186-87; see also 
In re Jesus R.
, 326 Ill. App. 3d 1070, 1073 (2002) (noting that delinquency proceedings are “strikingly similar to adult criminal proceedings” (emphasis omitted)). The legislature had a reasonable basis to make this distinction.

The dissent cites sections 5–710(1)(a)(viii) and 5–710(7) (see 705 ILCS 405/5–710(1)(a)(viii), 5–710(7) (West 2002)) for the proposition that, in this case, “detention would not have been available,” but those sections do not support its argument. First, section 5–710(1)(a)(viii) addresses detention under section 3–6039 of the Counties Code (see 55 ILCS 5/3–6039 (West 2002)), which the parties do not cite or discuss and, consequently, which the dissent cannot seriously contend is at issue in this case. Second, section 5–710(7), which prohibits commitment of a minor the Department of Corrections, Juvenile Division, “for a period of time in excess of that period for which an adult could be committed for the same act,” does not affect the trial court’s power to sentence a minor to detention in a juvenile detention home apart from the Department of Corrections. See 705 ILCS 405/5–710(1)(a)(v), 5–105(7) (West 2002).

Further, the dissent’s oversimplified and nearly tautological view that “section 5–125 violates equal protection because it allows minors such as defendants, prosecuted in municipal court, to be treated differently than minors prosecuted under the Act” misses the black-letter lesson that equal protection does not prohibit differential treatment 
per se
, but rather arbitrary differential treatment. As one hornbook states:

“The equal protection clause guarantees that similar individuals will be dealt with in a similar manner by the government. It does not reject the government’s ability to classify persons or ‘draw lines’ in the creation and application of laws, but it does guarantee that those classifications will not be based upon impermissible criteria or arbitrarily used to burden a group of individuals.” J. Nowak, R. Rotunda & J. Young, Handbook on Constitutional Law 519 (1978).

We simply conclude that, here, differential treatment in providing appointed counsel to minors prosecuted by the State under the Act, but not to minors prosecuted by the Cities outside the Act, was not arbitrary. Section 5–125 does not violate equal protection.

Andrew and Montrell entered uncounseled guilty pleas to violating municipal ordinances, received dispositions of court supervision, violated the terms of their supervision, and received sentences of detention for indirect criminal contempt following a hearing where they were represented by counsel. Andrew and Montrell argue that this procedure violates due process. Andrew and Montrell distill their argument: “Because the imposition of a sentence of supervision opened the door to the findings of indirect criminal contempt, the right to counsel attached at the underlying offense.”

As we have noted, the constitutional right of an indigent defendant to receive appointed counsel is not absolute. 
People v. Lynn
, 102 Ill. 2d 267, 274 (1984). In 
Argersinger v. Hamlin
, 407 U.S. 25, 37, 32 L. Ed. 2d 530, 538, 92 S. Ct. 2006, 2012 (1972), the United States Supreme Court held that “absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.” In 
Scott v. Illinois
, 440 U.S. 367, 373, 59 L. Ed. 2d 383, 389, 99 S. Ct. 1158, 1162 (1979), the Court held that “the central premise of 
Argersinger
–that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment–is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel.” Thus, under 
Argersinger
 and 
Scott
, the denial of the right to appointed counsel precludes the imposition of a jail sentence for an indigent misdemeanor defendant. This rule requires the trial court to look ahead: the court knows at the time of trial that it may not imprison the defendant unless the defendant was represented by counsel. 
Argersinger
, 407 U.S. at 40, 32 L. Ed. 2d at 540, 92 S. Ct. at 2014. Here, Andrew and Montrell did not receive sentences of detention, or even probation. Thus, they were not entitled to appointed counsel when they pleaded guilty. See 
City of Danville v. Clark
, 63 Ill. 2d 408, 413 (1976) (“
Argersinger
 *** is not applicable to ordinance violation prosecutions punishable by fine only”). Their uncounseled guilty pleas did not violate due process.

Though the constitutional issues raised by Andrew and Montrell both fail, we feel constrained to use our supervisory authority to reach another, nonconstitutional, issue implicated in this case, but not addressed by the parties. See Ill. Const. 1970, art. VI, §16 (“General administrative and supervisory authority over all courts is vested in the Supreme Court”); 
Administrative Office of the Illinois Courts v. State & Municipal Teamsters, Chauffeurs & Helpers Union, Local 726
, 167 Ill. 2d 180, 192 (1995). Our supervisory authority extends to “the adjudication and application of law and the procedural administration of the courts.” 
Kunkel v. Walton
, 179 Ill. 2d 519, 528 (1997). Though we exercise this authority only in exceptional circumstances (
Statland v. Freeman
, 112 Ill. 2d 494, 497 (1986)), we have grave concerns about the procedures employed in these cases and believe that they warrant correction (see 
McDunn v. Williams
, 156 Ill. 2d 288, 303 (1993) (“The supervisory authority is primarily directed to the court and its decision”)).

The trial courts in these cases imposed supervision. The Illinois Municipal Code does not specifically refer to supervision as a possible disposition for ordinance violations, but a municipality may provide “fines or penalties as may be deemed proper” for ordinance violations. 65 ILCS 5/1–2–1 (West 2002). The Cities here provided for supervision “as defined by the Unified Code of Corrections.”

Under the Unified Code of Corrections, “supervision” means “a disposition of conditional and revocable release without probationary supervision, but under such conditions and reporting requirements as are imposed by the court, at the successful conclusion of which disposition the defendant is discharged and a judgment dismissing the charges is entered.” 730 ILCS 5/5–1–21 (West 2002). Section 5–6–1(c) of the Code provides that “[t]he court may, upon a plea of guilty or a stipulation by the defendant of the facts supporting the charge or a finding of guilt, defer further proceedings and the imposition of a sentence, and enter an order of supervision of the defendant,” if the defendant has not been charged with certain Class A misdemeanors or a felony. 730 ILCS 5/5–6–1(c) (West 2002).

The trial court must defer entering any judgment on the charges until the end of the supervision period. 730 ILCS 5/5–6–3.1(d) (West 2002). At that time, if the defendant has successfully complied with all the terms of supervision, the court must discharge the defendant and dismiss the charges. 730 ILCS 5/5–6–3.1(e) (West 2002). If the defendant has violated a term of supervision, the court, on a petition by the State, may continue supervision or impose “any other sentence that was available [under the Code] at the time of initial sentencing.” 730 ILCS 5/5–6–4(e) (West 2002). Supervision, thus, is similar to a continuance, with a dismissal of the charge against the defendant conditioned upon compliance with the terms of release set by the court. See 
People v. Roper
, 116 Ill. App. 3d 821, 824 (1983).

Clearly, Andrew and Montrell violated the terms of their supervision, triggering the Cities’ contempt petitions.
(footnote: 1) Though we have sanctioned trial courts to use their contempt powers to enforce orders of supervision entered under the Juvenile Court Act (see 
In re G.B.
, 88 Ill. 2d 36, 43 (1981)), the trial courts here did not impose supervision under the Act. If they had, the minors would have enjoyed the benefits of counsel at the outset.

The dissent seems to argue that the judges of the Champaign County circuit court can do what they did as a proper use of the contempt power, but that the “root problem” is the fact that the minors did not receive appointed counsel in the initial proceedings. The dissent bases its position on 
Alabama v. Shelton
, 535 U.S. 654, 152 L. Ed. 2d 888, 122 S. Ct. 1764 (2002), which, it asserts, requires appointed counsel at the stage “when guilt was determined and the conditions of supervision imposed” and the defendants “became vulnerable to detention.”

In 
Shelton
, an indigent defendant was charged with misdemeanor assault, an offense punishable by a maximum of one year of imprisonment and a $2,000 fine. The defendant represented himself and was convicted. The trial court sentenced him to 30 days’ imprisonment, but suspended that sentence and placed him on two years’ unsupervised probation. The defendant appealed, arguing that his conviction and suspended sentence violated the sixth amendment because he did not receive appointed counsel at trial.

The United States Supreme Court defined a suspended sentence as “a prison term imposed for the offense of conviction. Once the prison term is triggered, the defendant is incarcerated not for the probation violation, but for the underlying offense.” 
Shelton
, 535 U.S. at 662, 152 L. Ed. 2d at 898, 122 S. Ct. at 1770. That is, a conviction which results in a suspended sentence results in imprisonment. 
Shelton
, 535 U.S. at 662, 152 L. Ed. 2d at 898, 122 S. Ct. at 1770. Because the defendant did not receive appointed counsel, the Court found a sixth amendment violation and affirmed a lower court decision vacating the defendant’s suspended sentence.

Here, unlike the defendant in 
Shelton
, the minors were not given suspended sentences of imprisonment, but instead court supervision. That is, they were not sentenced at all. In 
Shelton
, the Court addressed a similar disposition in discussing an argument that some jurisdictions cannot bear the costs of appointed counsel in all cases where the defendant receives a suspended sentence. The Court observed:

“Although [these jurisdictions] may not attach probation to an imposed and suspended prison sentence, States unable or unwilling routinely to provide appointed counsel to misdemeanants in Shelton’s situation are not without recourse to another option capable of yielding a similar result.

That option is pretrial probation, employed in some form by at least 23 States. [Citation.] 
Under such an arrangement, the prosecutor and defendant agree to the defendant’s participation in a pretrial rehabilitation program, which includes conditions typical of post-trial probation. The adjudication of guilt and imposition of sentence for the underlying offense then occur only if and when the defendant breaches those conditions.
 [Citations.]

*** [T]his system reserves the appointed-counsel requirement for the ‘small percentage’ of cases in which incarceration proves necessary [citation], thus allowing a State to ‘supervise a course of rehabilitation’ without providing a lawyer every time it wishes to pursue such a course [citation]. *** [P]retrial probation also respects the constitutional imperative that ‘no person may be imprisoned for any offense ... unless he was represented by counsel at his trial[ ]’ [citation].” (Emphasis added.) 
Shelton
, 535 U.S. at 671-72, 152 L. Ed. 2d at 903-04, 122 S. Ct. at 1774-75.

The Court in 
Shelton
 did not include Illinois among the 23 states that offer pretrial probation, but its description of pretrial probation squares with our description of supervision. See 730 ILCS 5/5–1–21 (West 2002); 
cf.
 730 ILCS 166/1 
et seq.
 (West 2002) (Drug Court Treatment Act, which allows circuit courts to establish, 
inter alia
, “pre-adjudicatory drug court programs”). The dissent describes pretrial probation as “a consensual proceeding which anticipates the cessation of prosecution.” This describes supervision as well. Pretrial probation, like supervision, is a disposition without a sentence of incarceration and does not require appointment of counsel.

Read correctly, 
Shelton
 offers no support to the defendants. The “root problem” is not the fact that the minors did not have appointed counsel; they were not entitled to lawyers at the initial proceedings. The root problem is that, fundamentally, prosecuting minors for contempt when they violate the terms of their court supervision misapprehends the nature of supervision and abuses the power of contempt.

“[S]upervision as practiced in cases dealing with minors has been used as a mechanism after a trial where the proffered evidence shows that the defendant is guilty of the offense charged. The entry of the finding of guilty by the trial court is then delayed with defendant’s consent and he is placed on supervision for a specific period of time.

When a trial court places a minor on supervision, it is with the hope of rehabilitating him. If at the termination of the supervision period, there is reason to believe that the defendant has been rehabilitated, the finding of guilty is not entered and the defendant is discharged, for the purpose of supervision is to save the minor a criminal record. However, if the court is advised at any time during the period of supervision of activities which demonstrate a defendant’s misbehavior or lack of cooperation with an appointed supervisory agency, the court may then enter its finding of guilty ***.” 
People v. Parr
, 130 Ill. App. 2d 212, 217 (1970).

Supervision, accordingly, is not probation:

“In probation proceedings, sentences are imposed without deferment, thus encumbering the probationer with an immediate record. On the other hand, in supervision the proceedings are deferred, the sentence is in a state of suspense, and no sentence or judgment will ever be entered if the defendant complies with the conditions.” A. Teton
, Crime without Conviction: Supervision without Sentence
, 19 J. Marshall L. Rev. 547, 561 (1986).

See also H. Sullivan, 
Supervision Comes to All of Illinois
, 65 Ill. B.J. 190 (1976) (referring to supervision as a “disposition,” not a sentence).

The recourse for a violation of the terms of supervision is a petition to revoke supervision, asking the court to lift the continuance, restart the case from the finding of guilt, and impose a sentence on the original offense. Thus, a contempt proceeding to prosecute a violation of supervision is “unnecessary in fact and inappropriate in theory.” 19 J. Marshall L. Rev. at 562; see 
In re T.V.P.
, 90 Ill. App. 3d 800, 801 (1980) (noting that “a contempt sanction *** for a juvenile subject to a supervisory order should seldom be imposed”); see also 
People v. Mowery
, 116 Ill. App. 3d 695, 704 (1983) (“The inherent power of contempt is a powerful one; it is not to be used lightly nor when other adequate remedies are available”). To hold a defendant in contempt for violating an order deferring judgment misapprehends the nature of the stick associated with the carrot of supervision. When a court imposes supervision, it strikes a deal with the defendant. The judge, in effect, says, “Abide by the terms of your supervision, or the court will lift the 
de facto 
continuance and sentence you,” not “Abide by the terms of your supervision, or the court will find you in contempt and detain you.”

Like a juvenile offender sentenced to probation, Andrew and Montrell knew that a violation of the terms of their supervision could result in a detention sentence, but unlike a juvenile offender sentenced to probation, Andrew and Montrell were never sentenced. Their cases were continued with conditions. When they violated these conditions, the Cities did not ask for the cases to proceed to sentencing, but instead asked for detention. As the Cities acknowledge, “There is no possibility of incarceration for the ordinance violations under [t]he Cities’ Codes. *** In other words, no violation of an Urbana or Champaign [m]unicipal ordinance can result in incarceration for the offense itself.” Accordingly, Andrew and Montrell were incarcerated for violating a court order entered on a municipal ordinance violation for which they could not have been sentenced to detention. In effect, the Cities expanded the sentencing options available to the trial courts by pursuing contempt sanctions.

In Champaign County, a parallel juvenile justice system exists. See 
In re K.S.Y.
, 93 Ill. App. 3d 6, 7 (1981). The Cities and the Champaign County circuit court have created a two-tiered procedure in which the Cities can bypass the protections of the Juvenile Court Act by filing a concurrent jurisdiction complaint against minors charged with municipal ordinance violations, obtain an order of supervision against such minors, then press contempt proceedings which result in detention when the minors violate the conditions of their supervision. This “system” might be a very good way to deal with recalcitrant minors as a matter of public policy; as a matter of law, it is improper because it substitutes a contempt proceeding for punishment under the municipal codes. It defies reason that municipal ordinance code violations prosecuted outside the Act which themselves are not punishable by imprisonment become punishable by imprisonment simply because the trial court ordered minors to abide by conditions unrelated to the initial violations. We hold that, in the absence of a statute allowing such a procedure, contempt may not be used as punishment for minors who violate orders of supervision entered on municipal ordinance violations which themselves do not permit imprisonment.

The dissent ignores the disastrous effects left in the wake of the result it advocates. If we were to hold, as the dissent would, that the defendant in every case involving a municipal ordinance violation–from traffic violations to nuisance violations to curfew violations–would be entitled to appointed counsel in every case where the trial court imposes supervision, simply because a violation of supervision could bring a jail sentence for contempt, already scarce resources better spent providing counsel to felony offenders and misdemeanants subject to imprisonment would be dissipated. This is a perversion of the sixth amendment. Rather than torture the Constitution, we prefer to correct a tortured use of court supervision and contempt.

Our decision to deal with the unique problems posed by the Champaign County approach to ordinance violations by fashioning a unique remedy with our supervisory authority was necessitated in part by our duty to adhere to the law as we found it. The dissent, finding a constitutional violation where none exists, would have us rewrite section 1–5 or section 5–125 of the Act to create a right to counsel where the General Assembly has not done so, simply to avoid the constitutional issues here. The dissent apparently is not satisfied with the very clear result of the defendants’ constitutional challenges and ask us to resort to judicial legislation rather than apply the law. We decline this invitation.

The Cities must request that the State proceed under the Juvenile Court Act, where minors have greater procedural protections, including the right to appointed counsel, if they want to transform guilty pleas to offenses like stealing $100 and staying out after curfew into sentences of detention. “The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, 
to insist upon regularity of the proceedings
, and to ascertain whether he has a defense and to prepare and submit it. The child ‘requires the guiding hand of counsel at every step in the proceedings against him.’ ” (Emphasis added.) 
In re Gault
, 387 U.S. 1, 36, 18 L. Ed. 2d 527, 551, 87 S. Ct. 1428, 1448 (1967), quoting 
Powell v. Alabama
, 287 U.S. 45, 69, 77 L. Ed. 158, 170, 53 S. Ct. 55, 64 (1932). This statement is particularly true when minors admit the charges against them. See 
In re Beasley
, 66 Ill. 2d 385, 397 (1977) (“courts can *** rely upon the protection which a minor receives through the representation of counsel in assuring that the admissions are voluntary and are not made in ignorance of his rights”).

CONCLUSION

For the reasons that we have discussed, we reverse the appellate court’s decisions, vacate the circuit courts’ orders finding Andrew and Montrell in contempt and sentencing them to detention, and remand to the circuit court to allow the Cities to file petitions to revoke supervision or to request that the State file delinquency petitions in these cases.

Appellate court judgments reversed;

circuit court judgments vacated;

causes remanded.

JUSTICE FREEMAN, dissenting:

At issue in these consolidated cases is section 5–125 of the Juvenile Court Act (705 ILCS 405/5–125 (West 2000)), which allows the prosecution of a municipal ordinance violation in either the juvenile division or another division of the circuit court. If the State proceeds against the minor under the Juvenile Court Act, the minor is afforded “all the procedural rights of adults in criminal proceedings,” including the right to counsel. 705 ILCS 405/5–101(3) (West 2000). If the minor is prosecuted in a division other than the juvenile division, judges have proceeded on the assumption that the minor does not benefit from these procedural protections. The majority holds that section 5–125 does not violate equal protection. The majority also holds that section 5–125 does not deny defendants due process of law by subjecting them to prosecution without benefit of counsel. Having found the statute constitutional, the majority necessarily holds that the prosecution of defendants in a division of the circuit court other than the juvenile division, and the ensuing orders of supervision, were proper. Surprisingly, the majority then proceeds to use this court’s supervisory authority to hold that the circuit court could not use its contempt power to vindicate its authority and obtain defendants’ compliance with the orders of supervision. The majority vacates the circuit court’s orders finding defendants in contempt and sentencing them to detention, and remands the causes to the circuit court so the cities may file petitions to revoke the orders of supervision or request that the State file delinquency petitions against defendants.

For several reasons, I cannot join the majority opinion. First, I believe that section 5–125 violates equal protection because it allows minors such as defendants, prosecuted in municipal court, to be treated differently than minors prosecuted under the Act. Second, I believe that principles of due process mandated appointment of counsel for defendants at the initial proceedings. Rather than find the statute unconstitutional, the majority unnecessarily infringes upon the circuit court’s contempt power. The majority fails to recognize the root problem at issue, that is the lack of representation for defendants at the initial proceedings. Lastly, I believe that, pursuant to section 1–5 of the Act (705 ILCS 405/1–5 (West 2000)), defendants were entitled to appointed counsel at the initial proceedings. Had the majority construed section 1–5 so as to afford defendants the right to counsel, an interpretation supported by the plain language of the Act, the majority would have had no occasion to consider the constitutional challenges to section 5–125 or to use the court’s supervisory authority to restrict the circuit court’s use of its contempt power.

As noted above, the majority finds that section 5–125 does not violate equal protection. The majority bases its holding upon a finding that defendants are not similarly situated to minors prosecuted under the Juvenile Court Act. The majority observes that a minor prosecuted under the Act may be placed in a different home environment; may be required to undergo substance abuse assessment and treatment; may be required to remove gang tattoos; may lose driving privileges; and may be placed in a juvenile detention home. Slip op. at 8-9. The majority concludes that prosecution by the State under the Act for an ordinance violation has more serious potential consequences for a minor than a quasi-criminal prosecution by a municipality outside the Act, and, consequently the legislature had a reasonable basis to provide heightened safeguards to a minor prosecuted under the Act. Slip op. at 9.

At the outset, the majority does not explain why some minors are prosecuted under the Juvenile Court Act and others are not. The minors have committed the same infractions. A decision is then made that some of the minors will be prosecuted under the Act, and others will be prosecuted by the municipality. A difference in treatment is already apparent. I also question the premise that a minor prosecuted by a municipality is not entitled to counsel because the minor does not face serious consequences. As illustrated by the orders of supervision entered in the cases at bar, and the relevant statutory provisions on supervision, the consequences to the minor are all too real. Like a minor prosecuted under the Act, the minor prosecuted by a municipality may have to make restitution; attend school; attend a nonresidential program for youth; reside with his parents or in a foster home; perform community service; undergo treatment for drug and alcohol abuse; and undergo medical, psychological or psychiatric treatment. See 730 ILCS 5/5–6–3.1 (West 2002). In addition, a minor prosecuted by a municipality may be ordered to pay a fine and court costs; pay a fee of $25 for each month of supervision; work or pursue a course of study or vocational training; contribute to his own support at home or in a foster home; support his dependents; comply with the terms of an order of protection; refrain from entering into a designated geographic area; refrain from having any contact with certain specified persons or particular types of persons; refrain from the use of drugs; refrain from operating any motor vehicle not equipped with an ignition interlock device; attend or reside in a facility established for the instruction or residence of defendants on probation; and submit to such other conditions as the court imposes. See 730 ILCS 5/5–6–3.1 (West 2002). Lastly, the minor may be subject to electronic home detention for repeated violation of the conditions of supervision. See 730 ILCS 5/5–6–4 (West 2002); 730 ILCS 5/5–8A–1 
et seq.
 (West 2002).

The majority finds relevant that the minor prosecuted under the Act may be placed in the guardianship of the Department of Children and Family Services. Presumably such placement is in the best interests of the minor. See 705 ILCS 405/1–2 (West 2002) (purpose and policy of the Juvenile Court Act); 705 ILCS 405/1–3(8) (West 2002) (defining guardianship of the person of a minor as the “duty and authority to act in the best interests of the minor”). Moreover, prosecution outside of the Act and placement of the minor on supervision may be used in a subsequent proceeding to make the minor a ward of the court and place him in the guardianship of the Department of Children and Family Services. See 730 ILCS 405/5–105 (West 2002) (defining delinquent minor as “any minor who prior to his or her 17th birthday has violated or attempted to violate, regardless of where the act occurred, any federal or State law, county or municipal ordinance”). I note that, in the case at bar, Andrew was made a ward of the court and placed on probation on July 30, 2001.

The majority also finds relevant that detention, pursuant to section 5–710(1)(a)(v) of the Act (705 ILCS 405/5–710(a)(v) (West 2002)), is a sentencing option available to the court when a minor is prosecuted in the juvenile division.
(footnote: 2) I acknowledge that section 5–710(1)(a)(v) provides for a term of detention. However, under the circumstances at bar, detention would not have been available. Section 5–710(1)(a)(viii) of the Act provides that a minor may be

“put on probation or conditional discharge and placed in detention under Section 3–6039 of the Counties Code for 
a period not to exceed the period of incarceration permitted by law for adults found guilty of the same offense or offenses
 for which the minor was adjudicated delinquent, and in any event no longer than upon attainment of age 21; this subdivision (viii) notwithstanding any contrary provision of the law.” (Emphasis added.) 705 ILCS 405/5–710(1)(a)(viii) (West 2000).

Furthermore, section 5–710(7) instructs that

“In no event shall a guilty minor be committed to the Department of Corrections, Juvenile Division for
 a period of time in excess of that period for which an adult could be committed for the same act.
” (Emphasis added.) 705 ILCS 405/5–710(7) (West 2000).

Defendants were prosecuted for municipal ordinance violations. The ordinances at issue do not provide for a term of incarceration. See City of Urbana Code of Ordinances §§1–10, 15–32 (1980); Champaign Municipal Code §§1–21, 23–211 (1985). It follows that upon a finding of guilt, defendants would not be subject to detention under section 3–6039 of the Counties Code or placed in the custody of the Department of Corrections, Juvenile Division, because an adult committing the same infraction would not be committed to the Department for any length of time.

In my view, section 5–125 would not violate equal protection only if the court construes section 1–5 of the Act (705 ILCS 405/1–5 (West 2000)) as giving minors the right to counsel at all proceedings, whether in the juvenile division or in another division of the circuit court.

Having rejected defendants’ equal protection challenge to section 5–125, the majority holds that due process does not require additional protections for minors who are prosecuted for violations of municipal ordinances in divisions of the circuit court other than the juvenile division. The majority states:

“In 
Scott v. Illinois
, 440 U.S. 367, 373, 59 L. Ed. 2d 383, 389, 99 S. Ct. 1158, 1162 (1979), the Court held that ‘the central premise of 
Argersinger
–that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment–is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel.’ Thus, under 
Argersinger
 and 
Scott
, the denial of the right to appointed counsel precludes the imposition of a jail sentence for an indigent misdemeanor defendant. This rule requires the trial court to look ahead: the court knows at the time of trial that it may not imprison the defendant unless the defendant was represented by counsel. 
Argersinger
, 407 U.S. at 40, 32 L. Ed. 2d at 540, 92 S. Ct. at 2014. Here, Andrew and Montrell did not receive sentences of detention, or even probation. Thus, they were not entitled to appointed counsel when they pleaded guilty. See 
City of Danville v. Clark
, 63 Ill. 2d 408, 413 (1976) (‘
Argersinger
 *** is not applicable to ordinance violation prosecutions punishable by fine only’). Their uncounseled guilty pleas did not violate due process.” Slip op. at 10-11.

By finding that section 5–125 does not violate constitutional principles the majority necessarily holds that the prosecution of defendants in a division of the circuit court other than the juvenile division, and the orders for supervision which followed, were proper. The majority finds itself in a predicament, however, because of the obvious plight of the minor defendants. The majority expresses “grave concerns about the procedures employed in these cases” and expresses its belief that the procedures “warrant correction.” Slip op. at 11. The majority proceeds to do so, through the use of the court’s supervisory authority, by invalidating the lower court’s use of contempt proceedings. Slip op. at 17-18.

At the outset, the majority acknowledges that the circuit court may use its contempt powers to enforce orders for supervision entered under the Juvenile Court Act. Slip op. at 12. The majority notes, however, that the circuit court did not impose supervision upon defendants under the Juvenile Court Act. Slip op. at 12. The majority opines:

“Like a juvenile offender sentenced to probation, Andrew and Montrell knew that a violation of the terms of their supervision could result in a detention sentence, but unlike a juvenile offender sentenced to probation, Andrew and Montrell were never sentenced. Their cases were continued with conditions. When they violated these conditions, the Cities did not ask for the cases to proceed to sentencing, but instead asked for detention. As the Cities acknowledge, ‘There is no possibility of incarceration for the ordinance violations under [t]he Cities’ Codes. *** In other words, no violation of an Urbana or Champaign [m]unicipal ordinance can result in incarceration for the offense itself.’ Accordingly, Andrew and Montrell were incarcerated for violating a court order entered on a municipal ordinance violation for which they could not have been sentenced to detention. In effect, the Cities expanded the sentencing options available to the trial courts by pursuing contempt sanctions.

In Champaign County, a parallel juvenile justice system exists. [Citation.] The Cities and the Champaign County Circuit Court have created a two-tiered procedure in which the Cities can bypass the protections of the Juvenile Court Act by filing a concurrent jurisdiction complaint against minors charged with municipal ordinance violations, obtain an order of supervision against such minors, then press contempt proceedings which result in detention when the minors violate the conditions of their supervision. This ‘system’ might be a very good way to deal with recalcitrant minors as a matter of public policy; as a matter of law, it is improper because it substitutes a contempt proceeding for punishment under the municipal codes. It defies reason that municipal ordinance code violations prosecuted outside the Act which themselves are not punishable by imprisonment become punishable by imprisonment simply because the trial court ordered minors to abide by conditions unrelated to the initial violations. We hold that, in the absence of a statute allowing such a procedure, contempt may not be used as punishment for minors who violate orders of supervision entered on municipal ordinance violations which themselves do not permit imprisonment.” Slip op. at 16-17.

The majority fails to take into consideration the unity of the court system and the traditional use of the contempt power to enforce a court order.

The Illinois Constitution provides that all circuit courts have original jurisdiction over all justiciable matters except where the supreme court is specified to have original and exclusive jurisdiction. 
People v. P.H.
, 145 Ill. 2d 209, 221-22 (1991), citing Ill. Const. 1970, art. VI, §9. Furthermore, it is the circuit court, as a whole, which is vested with jurisdiction rather than a particular division of the circuit court. 
P.H.
, 145 Ill. 2d at 222; 
People v. DeJesus
, 127 Ill. 2d 486, 498 (1989). Juvenile court is a division of a single unified circuit court and whether a minor is tried in juvenile or criminal court is a matter of procedure, not jurisdiction. 
P.H.
, 145 Ill. 2d at 222; 
DeJesus
, 127 Ill. 2d at 498; 
In re Greene
, 76 Ill. 2d 204, 213 (1979).

From the unified structure of the circuit court follows uniformity in the use of the court’s contempt power. A judge sitting in the juvenile division of the circuit court holds a person in contempt of court based upon the circuit court’s inherent power to vindicate its authority and enforce its orders. Likewise, a judge sitting in another division of the circuit court holds a person in contempt of court based upon the circuit court’s inherent power to vindicate its authority and enforce its orders. The judge in the juvenile division does not exercise the contempt power pursuant to any particular grant in the Juvenile Court Act. Rather, the judge exercises the contempt power as an alternate remedy to the provisions of the Juvenile Court Act. This court has heretofore explained these concepts in 
In re Baker
, 71 Ill. 2d 480 (1978), and 
In re G.B.
, 88 Ill. 2d 36 (1981).

In 
In re Baker
, 71 Ill. 2d at 480, the State filed a petition for rule to show cause why respondent, a minor otherwise in need of supervision, should not be held in contempt of court. Respondent moved to dismiss the petition on the ground that the exclusive remedy for violation of a court order was a further proceeding under the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, par. 702–3(d)). The trial judge held that sections 2–2(b) and 2–3(d) of the Juvenile Court Act (Ill. Rev. Stat. 1975, ch. 37, pars. 702–2(b), 702–3(d)) were unconstitutional legislative attempts to abridge the court’s contempt powers, held respondent in contempt, adjudged her a delinquent, and placed her on probation. On appeal to this court, the State argued that the Juvenile Court Act and the contempt power were not mutually exclusive and the circuit court’s use of the contempt power was appropriate as an alternative to the remedy provided in the Juvenile Court Act. This court agreed with the State and explained:

“A court is vested with inherent power to enforce its orders and preserve its dignity by the use of contempt proceedings. [Citations.] Because such power inheres in the judicial branch of government, the legislature may not restrict its use. [Citations.] That limitation upon legislative action does not, however, preclude the legislature from providing an alternative statutory solution, and that, in our opinion, is the effect of sections 2–2(b) and 2–3(d). Therefore, the circuit court erred in finding these sections of the Juvenile Court Act unconstitutional.

While not now disputing the existence of the contempt power, respondent urges its exercise in the circumstances of this case was unnecessary and erroneous. Her thesis is that since the legislature decided to provide a particular remedy for the violation of a court order, its decision should be respected. Respondent notes that the court’s solution to the runaway problem–placing her on probation with the Department–could have been as well accomplished by proceeding under section 5–2(1)(b)(1) (Ill. Rev. Stat. 1975, ch. 37, par. 705–2(1)(b)(1)). The flaw in this argument is the fact that respondent agrees that the alternative procedures are available to the court. Since the contempt power exists and there is a factual basis for that holding, the order cannot be said to be erroneous simply because an alternative route to the same objective was available. The trial court made a specific finding that the alternative remedy was ‘without sufficient deterrent effect,’ and respondent has presented nothing which convinces us of any impropriety in that finding.” 
In re Baker
, 71 Ill. 2d at 484-85.

In 
In re G.B.
, 88 Ill. 2d 36, the minor failed to attend school as directed by the trial court in proceedings under the Juvenile Court Act, and was found in contempt of court. The court placed the minor on probation for a year, ordered him to serve 19 days in a detention center, and again ordered that the minor attend school. The minor failed to attend school and was the subject of a second petition for contempt, which resulted in another order of probation and detention for a period of 60 days. On appeal, the minor argued that he was not subject to a dispositional order of probation under the Juvenile Court Act and the court lacked the authority to accomplish indirectly, by way of contempt, that which it could not do directly under the Juvenile Court Act. This court found the minor’s arguments unpersuasive. Noting there was a specific order that the minor attend school, the court stated:

“The contempt proceedings initiated March 5, 1979, were filed because of a violation of this interim order, the validity of which has not been challenged by the parties to this appeal. This, therefore, is not a case governed by the Juvenile Court Act. Rather, the propriety of placing this minor on probation depends upon the court’s power to impose punishment for contempt for the violation of its order.

Courts have the inherent power to enforce their orders by way of contempt. [Citations.] The power to punish for contempt does not depend on constitutional or legislative grant. Because the power to enforce court orders through contempt proceedings inheres in the judicial branch of the government, the legislature may not restrict its use.” 
In re G.B.
, 88 Ill. 2d at 41.

The court therefore held that finding a minor in contempt and placing the minor on probation as punishment for contempt are alternate procedures to those provided in the Juvenile Court Act for dealing with minors who contumaciously violate lawful court orders. 
In re G.B.
, 88 Ill. 2d at 42-43. Further, the court held that the trial court could impose incarceration for contempt. In doing so, the court rejected the minor’s argument that the trial court could not impose incarceration because, under the Juvenile Court Act, the trial court was not authorized to incarcerate a minor for violating an order of the court. 
In re G.B.
, 88 Ill. 2d at 44-45.

The majority cites 
In re G.B.
 for the proposition that a trial court may use its contempt powers to enforce orders for supervision entered under the Juvenile Court Act. Slip op. at 12. The majority then notes the trial courts here did not impose supervision under the Juvenile Court Act. Slip op. at 12. This distinction is invalid, however, because the trial court’s power to enforce an order for supervision, or any other order, stems not from the Juvenile Court Act but from the judiciary’s inherent power to enforce its orders through contempt proceedings.

The majority reasons further:

“To hold a defendant in contempt for violating an order deferring judgment misapprehends the nature of the stick associated with the carrot of supervision. When a court imposes supervision, it strikes a deal with the defendant. The judge, in effect, says, ‘Abide by the terms of your supervision, or the court will lift the 
de factor
 continuance and sentence you,’ not ‘Abide by the terms of your supervision, or the court will find you in contempt and detain you.’ “ Slip op. at 15-16.

It bears repeating that the majority sanctions the use of the contempt power by the juvenile court to enforce orders for supervision. Thus, the majority holds that the juvenile court may find “a defendant in contempt for violating an order deferring” a resolution of a prosecution. Slip op. at 15. I note that the circuit court is a unified court system and a juvenile has neither a common law nor a constitutional right to adjudication under the Juvenile Court Act. 
P. H.
, 145 Ill. 2d at 223. Consequently, this court cannot “sanction” the use of the contempt power to enforce an order by one division of the circuit court (see slip op. at 12) while disallowing its use by another division of the circuit court.

The majority concludes “[i]t defies reason that municipal ordinance code violations prosecuted outside the Act which themselves are not punishable by imprisonment become punishable by imprisonment simply because the trial court ordered minors to abide by conditions unrelated to the initial violations.” Slip op. at 16. Such is the nature of contempt, however, that a trial court may sentence a litigant to time in jail in a civil proceedings (
Williams v. Illinois State Scholarship Comm’n
, 139 Ill. 2d 24 (1990); 
Del Dotto v. Olsen
, 257 Ill. App. 3d 463 (1993)), or in the prosecution of an offense for which a term of incarceration is not available (
In re G.B.
, 88 Ill. 2d at 44-45).

In ruling that the trial courts could not use contempt proceedings to enforce the orders of supervision, the majority fails to take into consideration the unity of the court system and the power inherent in the circuit court, as a whole, to enforce court orders. The majority sows confusion by approving the use of contempt proceedings in one division of the circuit court and not another.
(footnote: 3) The majority’s reasoning also highlights troubling inconsistencies in the proffered analysis on the need for appointed counsel to represent minor defendants.

 As noted above, the majority holds that section 5–125 does not deny defendants due process of law because 
defendants were not entitled to representation by counsel at the initial proceedings
, that is, at the prosecutions of the municipal ordinance violations. However, the majority sanctions the circuit court’s use of the contempt power to enforce orders for supervision entered under the Juvenile Court Act while disallowing the use of the contempt power to enforce orders for supervision entered outside of the Juvenile Court Act. The motivating factor for the difference in treatment seems to be 
the lack of counsel at the initial proceedings
 against minor defendants. The majority states:

“Though we have sanctioned trial courts to use their contempt powers to enforce orders of supervision entered under the Juvenile Court Act (see 
In re G.B.
, 88 Ill. 2d 36, 43 (1981)), the trial courts here did not impose supervision under the Act. If they had, the minors would have enjoyed the benefits of counsel at the outset.” Slip op. at 12.

Yet later in the opinion, the majority emphasizes the need for representation of minor defendants at the initial court proceedings:

“ ‘The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, 
to insist upon regularity of the proceedings
, and to ascertain whether he has a defense and to prepare and submit it. The child “requires the guiding hand of counsel at every step in the proceedings against him.” ’ (Emphasis added.) 
In re Gault
, 387 U.S. 1, 36, 18 L. Ed. 2d 527, 551, 87 S. Ct. 1428, 1448 (1967), quoting 
Powell v. Alabama
, 287 U.S. 45, 69, 77 L. Ed. 158, 170, 53 S. Ct. 55, 64 (1932). This statement is particularly true when minors admit the charges against them. See 
In re Beasley
, 66 Ill. 2d 385, 397 (1977) (‘courts can *** rely upon the protection which a minor receives through the representation of counsel in assuring that the admissions are voluntary and are not made in ignorance of his rights’).” Slip op. at 17-18.

The majority’s solicitude for defendants’ lack of counsel at the initial proceedings contrasts sharply with the majority’s ruling that defendants were not entitled to representation by counsel at those proceedings. The inconsistency in the majority’s reasoning is further highlighted by the fact that defendants 
were represented by counsel at the contempt proceedings
. See slip op. at 2, 5. It is only at the initial proceedings, where the majority holds due process did not mandate appointment of counsel, that defendants did not have counsel appointed by the courts.

Having showcased the disparities in Champaign County’s “parallel juvenile justice system,” the majority could have construed section 1–5 or section 5–125 so as to afford minors counsel in the prosecution of municipal ordinances. Construing the provisions in that manner would have eliminated the constitutional issues these cases present. See 
Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers
, 531 U.S. 159, 173, 148 L. Ed. 2d 576, 588, 121 S. Ct. 675, 683 (2001) (“ ‘[w]here an otherwise acceptable construction of a statute would raise serious constitutional problems, [courts] will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress’ ”); quoting 
Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council
, 485 U.S. 568, 575, 99 L. Ed. 2d 645, 654 S. Ct. 1392, 1397 (1988); 
In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989
, 167 Ill. 2d 161, 168 (1995) (“If there is doubt as to the construction to be given a legislative enactment, the doubt must be resolved in favor of an interpretation which supports the statute’s validity (see 
Rehg v. Illinois Department of Revenue
, 152 Ill. 2d at 512); statutes will be construed to avoid an unconstitutional result (see 
Sayles v. Thompson
 (1983), 99 Ill. 2d 122”). In this regard, I base my position upon the Supreme Court’s opinion in 
Alabama v. Shelton
, 535 U.S. 654, 152 L. Ed. 2d 888, 122 S. Ct. 1764 (2002), where the Court required counsel for the defendant even though the defendant received a suspended sentence and was not actually incarcerated.

Defendant Shelton appeared 
pro se
 at a bench trial for a misdemeanor. The trial court convicted him of the misdemeanor and sentenced him to a 30-day jail term. However, the trial court suspended the sentence and placed Shelton on two years’ unsupervised probation, conditioned on the payment of court costs, a $500 fine, reparations of $25 and restitution of $516.69. Shelton appealed his conviction and sentence on sixth amendment grounds. The Supreme Court of Alabama held that Shelton could not be sentenced to a term of imprisonment absent provision of counsel. Accordingly, the court affirmed Shelton’s conviction and the monetary portion of his punishment, but invalidated the suspended prison sentence. See 
Alabama v. Alabama
, 535 U.S. at 658-660, 152 L. Ed. 2d at 896, 122 S. Ct. 1768.

In the Supreme Court, Shelton argued that an indigent defendant may not receive a suspended sentence unless he is offered or waives the assistance of counsel. The Court agreed, explaining:

“In 
Gideon v. Wainwright
, 372 U.S. 335, 344-45 (1963), we held that the Sixth Amendment’s guarantee of the right to state-appointed counsel, firmly established in federal-court proceedings in 
Johnson v. Zerbst
, 304 U.S. 458 (1938), applies to state criminal prosecutions through the Fourteenth Amendment. We clarified the scope of that right in 
Argersinger
, holding that an indigent defendant must be offered counsel in any misdemeanor case ‘that actually leads to imprisonment.’ 407 U.S., at 33. Seven Terms later, 
Scott
 confirmed 
Argersinger
’s ‘delimit[ation],’ 440 U.S., at 373. Although the governing statute in 
Scott
 authorized a jail sentence of up to one year, see 
id
., at 368, we held that the defendant had no right to state-appointed counsel because the sole sentence actually imposed on him was a $50 fine, 
id
., at 373. ‘Even were the matter 
res nova
,’ we stated, ‘the central premise of 
Argersinger
–that actual imprisonment is a penalty different in kind from fines or the mere threat of imprisonment–is eminently sound and warrants adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel’ in nonfelony cases. 
Ibid
.

“Subsequent decisions have reiterated the 
Argersinger-Scott
 ‘actual imprisonment’ standard. See, 
e.g.
, 
Glover v. United States
, 531 U.S. 198, 203 (2001) (‘any amount of actual jail time has Sixth Amendment significance’); 
M.L. B. v. S.L.J.
, 519 U.S. 102, 113 (1996); 
Nichols v. United States
, 511 U.S. 738, 746 (1994) (constitutional line is ‘between criminal proceedings that resulted in imprisonment, and those that did not’); 
id.
, at 750 (SOUTER, J., concurring in judgment) (‘The Court in 
Scott
, relying on 
Argersinger
[,] drew a bright line between imprisonment and lesser criminal penalties.’); 
Lassiter v. Department of Social Servs. of Durham Cty.
, 452 U.S. 18, 26 (1981). It is thus the controlling rule that ‘absent a knowing and intelligent waiver, no person may be imprisoned for any offense ... unless he was represented by counsel at his trial.’ 
Argersinger
, 407 U.S., at 37.

***

Applying the ‘actual imprisonment’ rule to the case before us, we take up first the question we asked 
amicus
 to address: Where the State provides no counsel to an indigent defendant, does the Sixth Amendment permit activation of a suspended sentence upon the defendant’s violation of the terms of probation? We conclude that it does not. A suspended sentence is a prison term imposed for the offense of conviction. Once the prison term is triggered, the defendant is incarcerated not for the probation violation, but for the underlying offense. The uncounseled conviction at that point ‘result[s] in imprisonment,’ 
Nichols
, 511 U.S., at 746; it ‘end[s] up in the actual deprivation of a person’s liberty,’ 
Argersinger
, 407 U.S., at 40. This is precisely what the Sixth Amendment, as interpreted in 
Argersinger
 and 
Scott
, does not allow
.” Shelton
, 535 U.S. at 661-62, 152 L. Ed. 2d at 897-98, 122 S. Ct. at 1769-70.

Declaring itself satisfied that Shelton was entitled to appointed counsel at the critical stage when his guilt or innocence of the charged crime was decided and his vulnerability to imprisonment was determined, the Court invalidated Shelton’s suspended jail term.

Returning to the cases at bar, the trial courts did not merely require that defendants pay a fine. Rather, the trial courts sentenced defendants to terms of supervision conditioned upon defendants attending school and meeting certain other requirements. As the majority opinion notes: “Andrew and Montrell knew that a violation of the terms of their supervision could result in a detention sentence.” Slip op. at 16. The fact that the trial courts contemplated additional punishment, whether that punishment be termed punishment for contempt of court or punishment for violation of the conditions of supervision, can be seen clearly from this exchange between the trial court and Andrew:

“THE COURT: Now, all I’m ordering you to do is what a kid your age is supposed to do. Follow the rules at home, go to school, not being in any trouble at school. You’re there to learn. That’s why there’s no suspensions, no detentions, no truancy, no tardy. And this is for a year; so this is going to be for all next year, too. Do you understand that?

[ANDREW]: Yes.

THE COURT: What you need to understand is that if you don’t do these things and come back here, the City can ask that you be held in contempt. And that’s different than what you’re here for. You can’t be locked up right now. 
But if you’re found to be in contempt of court, I can put you in the Detention Center for six months. And at the Detention Center, which you need to understand we have a brand new one which is bars and cinder blocks, that aside from going to school and maybe a half hour a day of recess type situation where you are in a controlled environment, there are no TVs, there are no radios in your room. If you don’t go to school, there is nothing to do
. And you have to go to school there, and you won’t be late to school there.

So you have the choice to make. You’re either going to do it the way you should do it or
 you’re going to do it anyway except you’re going to be locked up
. Any questions about that?

[ANDREW]: No.

THE COURT: So it’s up to you. You know what you should do. There is no question that you know what you should do. You just don’t like your situation and you’re acting out and this is going to stop because it doesn’t help you at all. Do you understand me?

[ANDREW]: Yes.

THE COURT: Do everything you’re supposed to, you’re done with this matter in a year. If you don’t, you’re going to be brought back here. And I want to make sure you understand what’s going to happen. That’s why I told you. Any questions about that?

[ANDREW]: No.” (Emphases added.)

Not surprisingly, when Andrew skipped school and visited Springfield without his mother’s permission, the trial court sentenced him to probation and 180 days’ detention, 8 days to be served immediately, and the remainder subject to remission. Andrew served an additional 47 days of detention because of subsequent violations of the conditions imposed by the court.

As in 
Shelton
, defendants were entitled to representation by counsel at the initial court proceedings. It is at this stage, when guilt was determined and the conditions of supervision imposed, that defendants became vulnerable to detention. The obvious intent to further punish defendants through the imposition of detention made representation necessary. As the majority aptly noted in discussing defendants’ due process challenge, the trial court must look ahead: the trial court knows at the time of trial that it may not imprison the defendant unless the defendant was represented by counsel. See slip op. at 10-11.

Noting that 
Shelton
 does not mandate appointment of counsel in cases involving pretrial probation, the majority maintains that appointment of counsel is likewise not mandated in cases involving supervision. See slip op. at 14. The majority’s attempt to equate supervision with pretrial probation is unavailing. As the Court observed in 
Shelton
, 535 U.S. at 671-72, 152 L. Ed. 2d at 904, 122 S. Ct. at 1774-75, pretrial probation is a consensual proceeding which anticipates cessation of prosecution:

“Under such an arrangement, the prosecutor and defendant agree to the defendant’s participation in a pretrial rehabilitation program, which includes conditions typical of post-trial probation. The adjudication of guilt and imposition of sentence for the underlying offense then occur only if and when the defendant breaches those conditions.”

The defendant agrees to the tolling of the statute of limitations for the crime and to a waiver of the right to a speedy trial. The prosecution agrees to dismiss all charges upon the defendant’s successful completion of the terms of probation. Adversarial proceedings are held in abeyance. A conviction and sentence are not entered unless the defendant violates the terms of probation and either pleads guilty or is found guilty after trial. See Conn. Gen. Stat. §54–56e (2003) (“Any such defendant shall appear in court and shall, under such conditions as the court shall order, be released to the custody of the Court Support Services Division ***. If the defendant refuses to accept, or, having accepted, violates such conditions, 
the defendant’s case shall be brought to trial
” (emphasis added)); N.Y. Crim. Proc. Law §170.55(3) (McKinney Supp. 2004) (“Upon or after arraignment in a local criminal court upon an information, a simplified information, a prosecutor’s information or a misdemeanor complaint, and 
before entry of a plea of guilty thereto or commencement of a trial thereof
, the court may, upon motion of the people or the defendant and with the consent of the other party, or upon the court’s own motion with the consent of both the people and the defendant, order that the action be ‘adjourned in contemplation of dismissal,’ as prescribed in subdivision two” (emphasis added)). In contrast, adversarial proceedings 
precede
 imposition of an order of supervision. The trial court accepts the defendant’s guilty plea or finds the defendant guilty after a bench trial or trial by jury. As the majority concedes, upon violation of the terms of supervision, the court restarts the case 
from the finding of guilt and imposes a sentence on the original offense
. See slip op. at 15. The defendant is not allowed to go behind the guilty plea or have the court vacate the conviction.

The majority insists that the description of pretrial probation as “a consensual proceeding which anticipates the cessation of prosecution” applies to supervision as well. Slip op. at 14. Not to belabor the point, however, supervision imposed under the Unified Code of Corrections follows an adjudication of guilt. The majority perhaps confuses supervision under the Code with supervision under the Juvenile Court Act. Section 5–615 of the Juvenile Court Act provides in part:

“(1) The court may enter an order of continuance under supervision for an offense other than first degree murder, a Class X felony or a forcible felony (a) upon an admission or stipulation by the appropriate respondent or minor respondent of the facts supporting the petition and 
before proceeding to adjudication
, or after hearing the evidence at the trial, and (b) in the absence of objection made in open court by the minor, his or her parent, guardian, or legal custodian, the minor’s attorney or the State’s Attorney.

(2) If the minor, his or her parent, guardian, or legal custodian, the minor’s attorney or State’s Attorney objects in open court to any continuance and 
insists upon proceeding to findings and adjudication
, the court shall so proceed.

* * *

(7) If a petition is filed charging a violation of a condition of the continuance under supervision, the court shall conduct a hearing. If the court finds that a condition of supervision has not been fulfilled, 
the court may proceed to findings and adjudication and disposition
.” 705 ILCS 405/5–615 (West 2002).

Thus, it is a continuance under supervision, pursuant to section 5–615 of the Juvenile Court Act, which shares common features with pretrial probation. Andrew and Montrell were not prosecuted under the Juvenile Court Act. Rather, they were prosecuted by the municipalities and the circuit court imposed supervision under the Uniform Code of Corrections.

The majority’s use of the court’s supervisory authority to arrive at a desired result is even more lamentable because the majority could also have effectuated relief for defendants through statutory construction. Defendants maintain that the Juvenile Court Act governs the manner in which juveniles are to be treated in the trial courts of Illinois. Defendants note that section 1–5 of the Act (705 ILCS 405/1–5 (West 2000)) affords minors the right to counsel in proceedings under the Act. Defendants acknowledge that section 5–125, a provision found in article V of the Act, allows prosecution of minors for violations of municipal ordinances in divisions of the circuit court other than the juvenile division, and further provides that said prosecutions may be done without reference to the procedures set out in the article. Defendants believe section 5–125 is a limitation on the procedures contained in article V of the Act and not a limitation on the rights afforded minors pursuant to section 1–5 of the Act. The State counters that defendants have waived this argument. The State argues further that section 1–5 of the Act does not apply to prosecutions of minors outside of the Act.

Although the majority rejects defendants’ argument, I believe that the plain language of the Act supports defendants’ position. Article I of the Act contains general provisions applicable to all articles of the Act. Section 1–5 of article I affords the minor the right to be represented by counsel in proceedings under the Act. Article V of the Act is devoted to the problem of juvenile delinquency. Section 5–125 of article V provides that a minor may be prosecuted and punished for a violation of a municipal ordinance without reference to the procedures set out in the article. Given that section 5–125 specifically refers to the procedures under article V, and given that article V contains various procedures applicable solely to delinquent minors, it follows that section 5–125 is a limitation on the procedures available to delinquent minors under article V as opposed to procedures generally available to minors pursuant to section 1–5 of article I. The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. 
People v. Rissley
, 206 Ill. 2d 403, 414 (2003); 
Midstate Siding & Window Co. v. Rogers
, 204 Ill. 2d 314, 320 (2003). Where the language of a statute is clear and unambiguous, the only legitimate function of the courts is to enforce the law as enacted by the legislature. 
Midstate
, 204 Ill. 2d at 320, 
Henrich v. Libertyville High School
, 186 Ill. 2d 381, 391 (1998).

In further support of defendants’ argument, I note that earlier versions of section 5–125 provided for prosecution and sentencing of the minor for an ordinance violation “without reference to the procedures set out in [the] Act.” See 705 ILCS 405/5–4(2) (West 1994); Ill. Rev. Stat. 1973, ch. 37, par. 702–7. As part of the Juvenile Justice Reform Provisions of 1998, the statute was amended to read that prosecution and sentencing of a minor for an ordinance violation shall be “without reference to the procedures set out in this Article [V].” See 705 ILCS 405/5–125 (West 2000). It is a maxim of statutory construction that “an amendatory change in the language of a statute creates a presumption that it was intended to change the law as it theretofore existed.” 
Weast Construction Co. v. Industrial Comm’n
, 102 Ill. 2d 337, 340 (1984). In amending section 5–125, the legislature must have intended to effectuate change.

Lastly, I note that certain provisions in article V refer to the Act in general as opposed to procedures available under article V. See 705 ILCS 405/5–150, 5–410 (West 2000). In contrast, other provisions in article V, including section 5–125, refer to procedures under the article. See 705 ILCS 405/5–135 (West 2000). The legislature presumably differentiated between the provisions for a purpose.

Because the majority fails to properly construe section 1–5, the majority is constrained to address the constitutional challenges defendants raise and use the court’s supervisory authority with the results noted above.

CONCLUSION

The cases at bar present a problem not with the use of the contempt power but with the lack of representation at the initial court proceedings. It must be remembered that the minor defendants were represented by counsel at the contempt proceedings. Defendants, however, appeared without aid of counsel at the initial proceedings and pled guilty to the charges against them. The majority’s solicitude for defendants should be translated into representation where it was needed, that is, where the minor defendants pled guilty and were exposed to punishment. The majority forgoes the opportunity to render moot the constitutional challenges to section 5–125 by construing section 1–5 so as to afford defendants the right to counsel. Instead, the majority attempts to provide help through the use of this court’s supervisory authority, disallowing the use of the contempt power in one division of the circuit court but not another. In doing so, the majority creates confusion and unduly infringes upon the use of the contempt power by the circuit court. I respectfully dissent.

FOOTNOTES
1:     
1
Contrary to the Cities’ assertions, the contempt proceedings were not separate from the ordinance violation proceedings; the Cities filed their contempt petitions under the same case numbers as the ordinance violations. “[I]ndirect criminal contempt is a separate and distinct proceeding in and of itself and is not part of the original case being tried when the contemptuous act occurred.” 
People v. Budzynski
, 333 Ill. App. 3d 433, 438 (2002), citing 
Cooter & Gell v. Hartmarx Corp.
, 496 U.S. 384, 396, 110 L. Ed. 2d 359, 375, 110 S. Ct. 2447, 2456 (1990).

2:     
2
I suggest that a minor, like Montrell, who committed a curfew violation could not have been subjected to detention at any stage of prosecution since the infraction would not have been illegal if committed by an adult. See 705 ILCS 405/1–4.1 (West 2002) (“any minor accused of any act under federal or State law, or a municipal ordinance that would not be illegal if committed by an adult, cannot be placed in a jail, municipal lockup, detention center or secure correctional facility”); 705 ILCS 405/5–401 (West 2002) .

3:     
3
The majority’s directive that the circuit court may not use the contempt power in a prosecution outside the Act may also conflict with legislative intent. Section 5–6–1 of the Unified Code of Corrections provides that the “Chief Judge of each circuit shall adapt a system of structured, intermediate sanctions for violations of the terms and conditions of a sentence of probation, conditional discharge or disposition of supervision.” 730 ILCS 5/5–6–1 (West 2002). Pursuant to section 5–6–4 and 5–8A–1 of the Code (730 ILCS 5/5–6–4, 5–8A–1 (West 2002)), intermediate sanctions shall include a term of electronic home detention. Clearly, the legislature intended that the circuit court have at its disposal a variety of tools and sanctions to use in dealing with recalcitrant minors.